## OVERTON *v.* LEA.

### (*Nashville.* May 11, 1902.)

1. WILL. *Bequest to widow takes precedence of others.*

    Where a testator bequeaths to his widow his entire personal estate and an annuity which is charged upon his lands and their rentals, and she accepts the provision thus made, and enters no dissent to the will, she takes the personalty and the annuity, in the absence of any expression or indication of a contrary intent in the will, as a purchaser, and upon consideration of her relinquishment of her statutory right of dower to the estate; and, in the event of deficiency of personal assets for the payment of debts, her bequest will be accorded precedence over other legacies or devises, whether general or special, bestowed as mere gratuities; and the latter will be abated or even exhausted for her protection against creditors of the estate; and for this purpose she will be subrogated to the rights of creditors who have been paid out of the fund or property bequeathed to her. (*Post, pp. 508–526.*)

    Code construed: §§ 4139, 4146 (S.); §§ 3244–3251 (M. & V.); §§ 2398–2404 (T. & S.).

    Cases cited: Reid *v.* Campbell, Meigs, 378; Malone *v.* Majors, 8 Hum., 580; Demoss *v.* Demoss, 7 Cold., 258.

2. SAME. *Same.*

    Where a testator bequeaths his entire personal estate to his wife, and she accepts it in lieu of dower in the realty, she takes the personalty as between herself and other legatees and devisees, who are mere volunteers, free from the debts of the estate, although the personalty is ordinarily the primary fund for payment of debts, and there is no provision made by the will for their payment, and notwithstanding the fact that there is a provision charging an annuity in her favor upon the realty and its rentals without mention of other charges. (*Post, pp. 526–538.*)

    Cases cited: Hope *v.* Wilkinson, 14 Lea, 21; Evans *v.* Beaumont, 16 Lea, 713; Latta *v.* Brown, 96 Tenn., 343; Hawkins *v.* Skeggs,

10 Hum., 30; Alexander v. Miller, 7 Heis., 65; Douglass v. Baber, 15 Lea, 651.

3. SAME.   *Bequest to widow charged on realty.*

A widow takes an annuity for life, not the mere annual surplus of rents, which is charged upon the realty itself as well as upon its rents, where the husband's will provides that she shall receive, and she accepts, in lieu of dower, *inter alia,* a bequest of $5,000, and directs a trustee to take charge of the realty and collect its rents, make repairs, pay taxes, insurance, etc., and pay over to her annually said sum of $5,000 out of the surplus, with remainder to others, and then devises the real estate to his children, subject to this annual charge in favor of the widow; and if the surplus of rents proves insufficient to pay said annual sum, she is entitled to have same made good out of the corpus of the real estate so charged with its payment.   (*Post, pp. 526–538.*)

Case cited: Morgan v. Pope, 7 Cold., 541.

4. SAME.   *Creates a contingent and determinable fee.*

A devise of realty to a woman "to and for her own use and benefit absolutely, provided that she does not marry again," with limitation over to another in the event of her marriage, does not invest her with an absolute estate in fee, but with a contingent estate determinable upon her marriage.   The limitation over is valid, and takes effect upon her marriage.   (*Post, pp. 538–547.*)

Cases cited: Brien v. Robinson, 102 Tenn., 157; Meacham v. Graham, 98 Tenn., 190: Smith v. Bell, M. & Y., 302; Bean v. Myers, 1 Cold., 227; Bradley v. Carnes, 94 Tenn., 27; Williams v. Jones, 2 Swan, 620; Booker v. Booker, 5 Hum., 504; Turner v. Durham, 12 Lea, 322; Troupe v. Hart, 7 Bax., 188; Sevier v. Brown, 2 Swan, 112; Thompson v. McKisick. 3 Hum., 634; Davis v. Richardson, 10 Yer., 292; David v. Bridgeman, 2 Yer., 558; Deadrick v. Armour, 10 Hum., 588; Read v. Watkins, 11 Lea, 158; Brown v. Hunt, 12 Heis., 409; Pool v. Pool, 10 Lea, 486; Bramlet v. Bate, 1 Sneed, 554; Cowan v. Wills, 5 Lea, 682; Ryan v. Monagan, 99 Tenn., 338; Ballentine v. Spears, 2 Bax., 273; Pillow v. Rye, 1 Swan, 185.

5. SAME.   *Conditions in restraint of marriage.*

Where a son makes a devise to his mother on condition she shall not marry again, with limitation over to another if she does, the condition is not void as being in restraint of marriage, and

Overton *v.* Lea.

her estate will determine and the limitation over will take effect upon her marriage. (*Post, pp. 548–554.*)

Cases cited: Gourley *v.* Thompson, 2 Sneed, 386; Hughes *v.* Boyd, 2 Sneed, 511;. Duncan *v.* Phillips, 3 Head, 417; Lane *v.* Crutchfield, 3 Head, 452; Reid *v.* Hancock, 10 Hum., 368; Herd *v.* Catron, 97 Tenn., 662.

6. SAME. *Conditions against alienation.*

It is a valid conditional limitation upon the devise of property by a son to his mother, that none of the property so devised shall go by inheritance, devise, gift, or otherwise from the mother to a named sister of the testator, or her husband, or their descendants, or any one of their name, and that, in the event of any such disposition, the property shall go to another named person. (*Post. pp. 554, 555.*)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. H. H. COOK, Ch.

BAXTER & HUTCHESON and W. A. BUNTIN for John Overton, Trustee.

JOHN J. VERTREES and C. D. BERRY for Mrs. Lea.

J. M. ANDERSON and PRESTON VAUGHN for Mrs. Bessie Leake.

McALISTER, J. The questions propounded for our determination upon this record involve the construction of two wills. Robert B. Lea, a citizen of Tennessee, died at Geneva, Switzerland, on

the 8th of January, 1895, while temporarily so-
journing abroad. He left surviving him a widow,
Rebecca Salmons Lea, and two children, John
McCormick Lea, Jr., and Bessie Lea, who inter-
married with Dalton Kelly, and upon his decease
was united in marriage with J. O. Leake. Mr.
Robert B. Lea, during his life, had come into
the possession of an estate estimated to be worth
two hundred thousand dollars, half of which he
owned absolutely and the remaining half as life
tenant. At his death he left a last will and
testament, which is now the subject of construc-
tion, and is copied herein as follows, to wit:

"This is my last will and testament. I ap-
point my brother, Overton Lea, as executor and
trustee of my estate, no security to be required
from him in either office.

"I give my personal property to my wife, Re-
becca S. Lea.

"The said Trustee will collect rents, make re-
pairs, pay taxes, insurance, etc., on the property,
and annually pay over to my wife, Rebecca S.
Lea, for and during the period of her natural
life the sum of five thousand ($5,000) dollars,
and the remainder of income, or as much of it
as may be necessary, shall be expended in the
education and maintenance of my two children,
John M. Lea, Jr., and Bessie Lea, and should
there be an overplus of income, the same is to
be invested for their benefit.

Overton *v.* Lea.

My entire real estate, subject to the annual charge of five thousand ($5,000) dollars for the benefit of my said wife for and during her natural life, I give to my said two children equally, but the share given to my said daughter is given to her for her sole and separate use.

"I appoint my said wife and my father, John M, Lea, as guardians to superintend the education of my said children. Should my said brother decline to act as executor and trustee of my estate, he is hereby authorized and requested to appoint as executor and trustee such person or persons, or corporation, as he may see fit, and it is left to his discretion whether or not security shall be taken from such appointee.

"Witness my hand this 19th day of April, 1893.                           ROBT. B. LEA."

"Signed by us as witnesses, in the presence of the testator, and at his request, and in the presence of each other.

"LUKE LEA,
"C. L. KEITH,
"*Witnesses.*"

It will be observed that the testator bequeathed all his personalty to his widow. It transpired that at the death of Mr. Lea, in 1895, he left only a small personal estate, not exceeding $10,-000 in value, consisting of household furniture at Nashville, statuary, silver plate, etc., and several thousand dollars in money. The executor applied

a portion of this money in payment of debts of
the estate and the balance towards the annuity of
the widow.

The Court of Chancery Appeals concurred with
the Chancellor in holding, viz.:

That the money owned by Robert B. Lea at
the time of his death was subject to the pay-
ment of his debts, and did not pass to and
become the property of Mrs. Rebecca S. Lea;
that said sums were rightly used in the payment
of his debts, and that the real estate devised by
the said Robert B. Lea is not subject to charge
in favor of Mrs. Rebecca S. Lea, for reimburse-
ment or payment of said sums of money owing
by said Robert B. Lea at his death. Mrs. Re-
becca S. Lea assigns as error this holding of the
Court of Chancery Appeals. It is insisted that
the bequest of all his personal property by the
testator to his widow was part of the pecuniary
provision which he made for his widow, and was
in lieu of her dower and distributive share. The
contention made on Mrs. Lea's behalf is that
the personal property, including the money, should
have been paid to her in preference to any and
all other bequests or devises, and that the tes-
tator's debts should have been paid out of his
real estate. It is moreover insisted that in the
event the executor is permitted to use the per-
sonalty in payment of debts, the widow becomes

subrogated to the rights of the creditors against the real estate.

The main contention under this assignment is that the legacy of the personalty and the provision for an annuity for the widow were in lieu of her dower in the realty and distributive share in the personalty, and that she, therefore, occupied the relation of a purchaser for value, and that her rights under the will were superior to the other legatees and devisees. It is then insisted that her bequest of the personal estate having been appropriated by the executor to the payment of the debts, she should be reimbursed from the other property of the estate.

The Court of Chancery Appeals, after a review of the authorities, was of opinion that the legacy of the personalty and the annuity were bequeathed to the widow in lieu of dower, and that she took said bequests as purchaser. This conclusion was based on two grounds. First, it must be presumed that husband and wife both had knowledge of the existence of our statute, giving to the widow one year within which to dissent from the will, if not satisfactory to her. It is then said that the provisions made for Mrs. Lea in this will must be viewed in the light of an offer from her husband, which she might accept in lieu of dower and distributive share, or reject and avail herself of the provisions of the statutes made for the benefit of widows. It is then

stated that Mrs. Lea not only failed to dissent, but from time to time accepted payments on the annuity. The conclusion is then stated that by this conduct she distinctly accepted the offer made to her in the will.

Second. It is then said that the provisions made in favor of the wife and children are inconsistent with any claim of dower on her part. Hence, it must be inferred from the face of the will itself that the provisions made for her were intended to be in lieu of her dower and distributive share. It is upon this line of reasoning that the Court of Chancery Appeals holds that Mrs. Lea occupied the attitude of a purchaser with reference to her husband's will, and that her position is necessarily superior to that of other persons who are mere objects of the testator's bounty, whether that bounty be put in the form of a general or specific legacy or devise.

But that Court concludes that since the testator made no provision in his will for the payment of his debts, he understood that the personal property so bequeathed to his wife must be such as would be left after the payment of his debts, and that the widow must be presumed to have had the same understanding of the meaning of the offer, and to have accepted the bequest accordingly. It is further stated by that Court that this view is strengthened by the consideration that the provisions made in the will for the

Overton *v.* Lea.

widow were probably worth more to her than dower and a distributive share of the personalty in view of the debts, which must be paid out of the personal estate and the unimproved condition of a large part of the realty, which would have produced no income, but, on account of tax charges, would have been a burden. The first question presented to this Court for determination is, whether the widow is a purchaser for value under the will of her husband in such sense that she must be reimbursed for her general legacy, which was appropriated by the executors in payment of debts. This question, so far as we are advised, is *res integra* in this State, or, at least, no reported decision of this Court on the subject has been brought to our attention.

Mr. Pomeroy, in his work on Equity Jurisprudence, Vol. 3, Sec. 1141, says, viz.: "It is the settled rule of equity, independent of statutes, that among general legacies there is no precedence, no exemption from *pro rata* or complete abatement, in favor of legacies to a wife, child, or other near relative of the testator. In the next section (1142) the same author says: "One exception to the general rule of abatement has always been admitted by Courts of equity. A general legacy given for a valuable consideration, as, for example, to a widow in lieu and satisfaction of her dower, or to a creditor in payment or discharge of a debt, has priority, and does not abate with

the other legacies, provided the dower right or the debt still exists at the testator's death." The author cites a large number of cases as authority for the text. Among the cases cited is *Borden* v. *Jenks,* 140 Mass., 562, S. C., 54; Am. Rep., 507, in which the syllabus is as follows, to wit:

"A pecuniary legacy to the testator's widow, accepted by her, must be paid not only in preference to general legacies, but if the abatement of those proves insufficient, in preference, first, to specific bequests, and second, to specific devises."

The opinion says:

"The widow is a purchaser for value in accepting the provisions of the will, and is not treated as a gratuitous object of the testator's bounty. By relinquishment of her dower, the estate acquires a valuable right of property. Whether the provision be more or less, so far as the testator, the widow, and all pure bene-ficiaries under the will are concerned, it is the right of the testator to affix what consideration he pleases for the relinquishment of dower, and for the widow to accept or reject it. Whether as against creditors a provision in lieu of dower far exceeding its value could be held good, need not now be discussed."

"The right of the widow to priority in the payment of the legacy, which she takes in consideration of the relinquishment of dower, is so well established that it hardly requires the cita-

tion of authorities. *Burridge* v. *Brady,* 1 P. Wms., 127; *Blower v. Morrett,* 2 Ves., Sen., 420; *Norcott* v. *Gordon,* 14 Simons, 258; *Williamson* v. *Williamson,* 6 Paige, 298, 304; *Pollard* v. *Pollard,* 1 Allen, 490; *Towle* v. *Swan,* 106 Mass., 100; *Farnam* v. *Bascom,* 122 Mass., 282, 289.

"It is contended on behalf of George A. Jenks that the true meaning of the gift is as if it were written, 'I give to my widow $2,000 out of my personal estate not specifically bequeathed.' But in view of the valuable consideration she pays, she is to be treated as a quasi creditor, and as the gift relieves the estate of the testator from a proper charge thereon, the testator must be held to have intended, in the absence of direction to the contrary, that it should be paid out of any property which he had to bequeath or devise, of course in the order in which that property was properly to be subjected to charge. The legacy of personal chattels specifically bequeathed to George A. Jenks must therefore abate, and, if necessary, the specific devise of the land, in order to satisfy the legacy to the widow."

It should be remembered that in the foregoing case the provision made for the widow was not in terms declared to be in lieu of dower, but such was found to be the intention of the testator by necessary implication.

In *Williamson* v. *Williamson,* 6 Paige, N. Y., Ch. 298, it was held: "A legacy to the widow, in lieu of her dower, draws interest from the death of the testator, where he has provided no other means for her support during the first year after his death. And such legacy does not abate ratably with other general legacies in case of a deficiency. of assets."

In 1 Allen (Mass.), 490, *Pollard* v. *Pollard,* January Term, 1861, it was held:

"A widow to whom a legacy is given in lieu of dower is entitled to be paid in full, in case of a deficiency of assets, in preference to legatees who are mere volunteers; and to receive interest thereon from the death of the testator, if he has provided no other means for her support during the first year after his death."

In 2 Ves., Sen. (Eng. Ch.), 420, *Blower* v. *Morrett,* July Term, 1752, it was held:

"The pecuniary legacy to the widow does not abate where the legacy is meant as a purchase of dower to which the widow is entitled."

In 38 Ga., 320, *Clayton* v. *Aiken,* December Term, 1868, it was held, viz.: "When a testator, in a single item of his will, gave to his wife $1,500 in money, various articles of personal property, and a life estate in a certain house and lot and its appurtenances, with the privilege, if she so desired, to take $1,000 in money in-

stead of the life estate in the house and lot, and in a subsequent item distinctly declared that the legacy left his wife was in lieu of dower, held, that the word 'legacy' in the last item covers all the several bequests of the first, and should she prefer the $1,000 in lieu of the life estate, and elect to take her 'legacy' in lieu of dower, she takes all the several bequests in her character as doweress."

When a legacy left to a wife is expressed to be in lieu of dower, and she elects to take the "legacy," she takes it as a quasi purchaser, and in a contest between her and other legatees, whether general or specific, she cannot be called upon to abate with them, to make up a deficiency of assets."

In 23 Conn., 327, *Lord* v. *Lord,* it was held: "Where a clear and manifest intention can be deduced from the provisions of a will, that a legacy to the testator's wife was intended by him to be in lieu of dower, it will be so regarded, and in case of a deficiency of assets, such legacy does not abate ratably with other legacies for the payment of the testator's debts.

"The widow's relinquishment of dower is viewed as a valuable acquisition to the estate, and, therefore, the equivalent must be paid in full, even where other legacies have to abate. And in such a case, the widow is entitled to interest upon a legacy given in lieu of dower, from the death

of the testator, it being regarded as an alimentary stipend." Redfield on Wills (2d ed.), pp. 363, 364.

The doctrine enunciated in all these cases seems to have originated in the case of *Burridge* v. *Brady*, 1 P. Williams, 127.

In that case the testator devised 3,400 £ for the benefit of his widow, "she releasing her dower." The Court said the 3,400 £ shall have the preference, and if there be not assets enough to pay the other legacies, they must be lost . . . as the wife is a *purchaser of the annuities for her life by releasing her dower.*"

That case was decided by Chancellor Cowper in 1710, and was based upon the common law right of dower, as were all the subsequent English cases cited by Mr. Pomeroy in his note.

At the common law, whenever a husband acquired real estate, his wife's inchoate right of dower immediately attached, and this right he could not defeat either by sale or conveyance during his life, or by testamentary disposition. It is obvious, therefore, that the widow was possessed of a valuable interest in her husband's estate, which she acquired during his life, and which she might relinquish in favor of his estate upon his death. Moreover, it is well known that at common law and prior to Sec. 4146, Shannon's Code, the widow was not required to make her election between her dower and a testamentary

provision, but she might take both, unless the will expressly or constructively provided that the bequest should be in bar or satisfaction of her dower. *Reid* v. *Campbell,* Meigs, 378-388; *Malone* v. *Majors,* 8 Hum., 580; *Demoss v. Demoss,* 7 Cold., 258. By statute in this State the widow's right of dower has been very much restricted, so that now she is only entitled to dower in one-third of all the lands of which her husband dies seized and possessed, or of which he was the equitable owner. This provision is made for her in the event of the intestacy of her husband. Shannon Code, § 4139.

In case her husband leaves a will, and, in the opinion of the widow a satisfactory provision in real or personal estate is not made for her, she may dissent from the will, in which event she is required to signify her dissent in open Court, within one year after the probate of the will. Shannon's Code, § 4146.

In case she exercises her right of dissent, she is then entitled to the dower and distributive share, which are provided for the widow in case of the intestacy of the husband. But, since at common law the widow might take both her dower and a testamentary bequest, it was held the testator might put her to an election by an express provision in his will. If the widow chose to take under the will, she was regarded, on account of the valuable right surrendered by her,

as a purchaser for value, and her bequest took priority in payment over mere gratuitous legatees. Since our early Act embodied in the Code, § 4146 (Shannon), the widow is put to her election within the time and in the manner prescribed to take under the will, or to dissent from the same and to take her statutory dower and distributive share. Now, in view of all these statutory modifications of the common law with respect to the widow's right of dower, the question is presented, whether the principle announced in *Burridge* v. *Brady,* and the subsequent cases cited by Mr. Pomeroy, are applicable. It is argued that since our statutes, that during the life of the husband, the widow has no right to or interest in any part of his estate, inchoate or consummate; that he may sell any or all of it without her concurrence, and she can only be endowed of an interest in that remaining at his death, and then only in case he dies *intestate.* It is insisted that since our statutes the rights of the widow and heir are identical, in that they each attach at his death, and only upon such realty and personalty as he owns at his death, and only in case the decedent dies *intestale.*

It is then argued that the widow surrenders no legal interest to take under the will, for the reason that she has nothing to surrender, and hence she cannot be a purchaser for value. The argument is that the widow's right to dower only

attaches when she exercises her right to dissent from the will, and that the law then makes provision for her. We think this argument unsound. The widow does surrender her statutory dower when she takes under the will. It is true this statutory substitute for dower is not so valuable a right to the widow as the dower guaranteed her at common law, but it is, nevertheless, a valuable right which she may surrender in favor of her husband's estate. It is a valuable right, as much vouchsafed to her by statute as was the right of dower guaranteed the widow by the common law. The husband, when he comes to make his will, knows, or is presumed to know, that the statutes of this State guarantee to a widow for life one-third of the real estate of which he may die seized and possessed, or of which he is equitable owner, provided she sees proper to dissent from his will, and hence he cannot make a will without making provision for the wife. If she takes under the will she becomes a purchaser, because she surrenders valuable rights guaranteed to her by statute.

The bequest of the personalty herein was a portion of the pecuniary provision made for the widow in lieu of dower. In accepting the provisions of the will, the widow became a purchaser for value of the pecuniary bequest, consisting of the personal property and the annuity.

It follows that, in our opinion, the provisions

made for Mrs. Lea, in the will of her husband, being upon consideration of the relinquishment by her of her statutory dower, take precedence of the legacies and devises to mere volunteers, whether such gifts be specific or general. In this view of the case, it is also immaterial whether the bequest of his personal property by the testator to his widow is general or specific. But it was held by the Court of Chancery Appeals that inasmuch as the testator made no provision for the payment of his debts, he understood that the personal property bequeathed to his widow was such as might be left after the payment of his debts. In support of this holding it is argued that, in the absence of any provision for the payment of his debts, that the law presumes that the testator intended his debts to be paid out of the property on which the law first or primarily fixes the liability, that is, the personal estate. It is insisted the language of the will, "I give my personalty to my wife," means, "all of my personalty after the payment of my debts," and it is argued that this position is strongly reinforced by the last clause of the will, in which he states that he gives his real estate, subject to the *annuity charge* during the life of his wife, to his two children equally, thereby showing that he intended no charge to be made against the real estate except the one mentioned.

Counsel cite in support of the holding of the

Overton *v.* Lea.

Court of Chancery Appeals, *Croch's Ex'r* v. *Croch's Adm'r*, 1 Am. St. Rep., 161.

It is conceded that the law in this State is that the general personal estate of a decedent is the primary fund for the payment of debts and legacies, and will always be first applied until exhausted, unless there are express words or a manifest intent in the will that the order shall be changed, and that debts and legacies shall be paid in whole or in part out of some particular fund or property especially designated for that purpose. The testator may by express terms charge his debts and legacies, or any of them, upon his real estate, or any part of it, or upon the rents and profits of land, or upon any particular fund or personal estate.

Pritchard on Wills and Administrators, Sec. 470; 2 Woerner Am. Law Ad., Secs. 489-493; *Hope* v. *Wilkerson,* 14 Lea, 21; *Evans* v. *Beaumont,* 16 Lea, 713-718; *Latta* v. *Brown,* 96 Tenn., 343.

In case there be a will, the same rule prevails, and the creditor is entitled to enforce his debt against the personalty at law in the hands of the representative, regardless of the provisions of the will, if by any process he can reach it. *Hope* v. *Wilkerson,* 14 Lea, 21. So that Judge John M. Lea, the executor of Robert B. Lea, was fully warranted, as matter of law and fact, in paying the debts out of the personal estate.

But does this defeat the right of the widow to her bequest. It has been shown that the widow is not a mere beneficiary or gratuitous object of the testator's bounty, but a purchaser for value. It is insisted, therefore, that a portion of the pecuniary provision made in lieu of the widow's dower, having been used in payment of the debts of her husband's estate by the executor, she is subrogated to the rights of the creditors against the real estate and entitled to compensation. In our opinion this position is sound, and is sustained by numerous authorities in this State. In *Hope* v. *Wilkinson, supra,* it was held that a legatee whose legacy has been absorbed in payment of debts of the estate, is entitled by subrogation to the rights of creditors to have his legacy paid out of undevised realty. In the case of *Hawkins* v. *Skeggs,* 10 Hum., 30, it was held that:

Where the widow, to whom negroes are specifically devised during widowhood, permits the hire of the negroes to be appropriated to the payment of debts of the estate in exoneration of other property previously liable, she is entitled to be remunerated out of such other property to the extent of her advances, upon the termination of her estate by marriage.

In *Alexander* v. *Miller,* 7 Heis., 65, it appeared that a testator directed his debts to be paid out of any moneys he might die possessed

of, or which might first come to the hands of
his executors—a fund, however, proving insufficient;
he then gave his wife a life estate in all his
property, real and personal, not otherwise disposed
of, and then, after some specific devises and be-
quests, to take effect after the termination of the
wife's estate, he directed that all the remaining
personal property not otherwise disposed of should
be divided equally among his grandchildren, etc.
No disposition was made of the reversions of
portions of the realty in which a life estate was
given to the wife, including some property acquired
after execution of the will. Held that the per-
sonalty being specifically bequeathed, was exonerated
from primary liability for the debts after the
exhaustion of the money, and that the undivided
reversions should next have been resorted to. But
recourse having been had to the personalty for
the payment of debts, the legatees were subro-
gated to the rights of the creditors against the
undevised realty.

In *Douglass* v. *Baber,* 15 Lea, 651, it ap-
peared that a testator directed the payment of
his debts as soon as possible from any money
that he might die possessed of. He then specifi-
cally devised the personalty. Held, that the debts
were payable from the undevised realty.

We are aware that in *Alexander* v. *Miller,*
*supra,* the Court, in stating this rule, said, viz.:

"Not so, however, if the real estate is devised; for the obvious reason that in such case it is as much the intention of the testator that the devisee shall have the real estate, as it is that the legatee shall take the personal estate bequeathed to him."

But in the present case we hold that the provisions made for the widow stand on a higher ground than the devises to the children.

The fundamental error, as we conceive, in the decree of the Chancellor, as well as that of the Court of Chancery Appeals, on this branch of the case, was in ignoring the fact that the bequests to the widow were made in lieu of dower, that she was a purchaser for value, and that under the authorities her bequest has priority, and does not abate with the other legacies.

The next assignment is that the Court of Chancery Appeals erred in holding that the deficiency in the payment of the annuity of five thousand dollars for any year or years since the death of Robert B. Lea is not a charge upon the *corpus* of the real estate devised by said Robert B. Lea, deceased, and that said annuity is chargeable exclusively to the income derived from the said estate, and that the deficiency for any one or more years shall not be paid out of the rent or income of any subsequent year or years. The insistence of learned counsel is that the payment

of the annuity was a charge upon the real estate devised by said Robert B. Lea, that Mrs. Lea is entitled to arrears in the payment of the annuity, with interest thereon, and that such arrears of payment are a charge upon said real estate.

The Court of Chancery Appeals finds as a fact that after the payment of insurance, taxes, repairs, etc., on the property, there was not enough left from the income to pay annually the full amount of the annuity to Mrs. Lea, and that a deficiency in the payment of said annuity existed, but the exact amount thereof did not appear from the record.

The provisions of the will on the subject of the annuity are as follows:

In the third clause of his will, Robert B. Lea directs his testamentary trustee to pay Mrs. Rebecca S. Lea, his widow, the sum of $5,000 per year in these words:

"The said trustee will collect rents, make repairs, pay taxes, insurance, etc., on the property, and annually pay over to my wife, Rebecca S. Lea, for and during the period of her natural life, the sum of five thousand ($5,000) dollars, and the remainder of income, or as much of it as may be necessary, shall be expended in the education and maintenance of my two children, John M. Lea, Jr., and Bessie Lea, and should there be any overplus of income, the same is to be invested for their benefit."

The fourth clause of said will declares this annuity to be an annual charge on his entire real estate. It is in these words:

"My entire real estate, subject to the annual charge of five thousand ($5,000) dollars, for the benefit of my said wife for and during her natural life, I give to my said two children equally, but the share given to my said daughter is given to her for her sole and separate use."

As already stated, the Court of Chancery Appeals were of opinion that the annuity was only charged upon the income, and that the income of any one year could not be taken to make up the deficiency of any other or preceding year.

As opposed to this view, counsel for Mrs. Lea insist that the testator was not content with the direction to the testamentary trustee to pay the annuity of $5,000.00 to his wife out of the income of his property, but to insure her this annual sum, when he comes to devise his realty to his children, he expressly charges that realty with the annual payment to his widow of $5,000. In other words, the insistence is that the annuity is to be paid out of the income, if that be sufficient, but if not, it is to be a yearly charge on the realty.

The intention of the testator is the cardinal rule by which Courts should be governed in the construction of wills. Was it then the intention of the testator simply to give his wife the yearly

income from his property after the payment of taxes, insurance, and repairs, or to provide an an annuity of a specific amount and charge his real estate with the payment, if the rents should prove insufficient?

Says Mr. Page, in his new work on Wills, Sec. 607, viz.: "Where it is doubtful whether the testator intended to make a gift of income, or to create an annuity, the question is one of his intention to be determined usually by finding from the will whether the gift was to be paid out of the principal in any event, or only the income of the principal was to pass."

In *Bartlett* v. *Slater,* 53 Conn., 102 (S. C., 55; Am. Rep., 73), it is said: "There is a distinction between an income and an annuity. The former embraces only the net profits after deducting all necessary expenses and charges, and may be uncertain in amount. The latter is a fixed amount directed to be paid absolutely and generally without contingency." *Morgan* v. *Pope,* 7 Coldwell; Am. & Eng. Enc. Law (2d ed.), Vol. 2, p. 389.

It is obvious that it was not the income merely of his real estate, after deducting taxes and expenses, that the testator bequeathed to his widow, but a fixed, definite amount, which was made a specific charge upon the real estate devised to his children.

24 P—34

But the position of the Court of Chancery Appeals is that if the income of a particular year fails to yield the amount of the annuity, the deficiency cannot be made good from the income of a subsequent year, nor from the *corpus* of the estate, but is lost to the annuitant. The logic of this position is that if the net income from rents should only realize $500 a year instead of $5,000, the annuitant must be content with that sum, and it must follow that if the rents do not yield any net income at all, the annuitant must be disappointed altogether. This has never been the law. In the case of *Foster* v. *Smith,* 2 Younge & Collyer English Chancery Reports, 192, it appeared that the testator devised and bequeathed his freehold and leasehold estates to trustees, upon trust to receive the rents and profits thereof when and as the same should become due and payable, and thereout, to pay his wife, if she should survive him, an annuity of £ 200 during the term of her life, to be paid by four equal quarterly payments, etc., and from and immediately after the decease of his wife, upon trust that the trustees should convey and assure the said freehold and leasehold premises unto his, the testator's, three sisters as tenants in common, their heirs, executors, and assigns. The rents and profits being insufficient for the payment of the annuity, held that the arrears due

at the widow's death were chargeable on the · *corpus* of the estates.

. In *Playfair* v. *Cooper,* 17 Beav., 187, it appeared that a testatrix directed her trustees "to levy and raise, out of the interest, dividends, and annual produce of certain trust funds, an annual sum of 100 £ and pay the same to R. P. during his life, and subject and without prejudice to the payment of the said annuity," to pay the income of the trust funds to F. C. for life, and after his decease, "subject and without prejudice, as aforesaid," to stand possessed of the trust funds, for other persons. The income of the fund was insufficient to pay the annuity. Held, that such arrears were a charge upon the *corpus* of the trust property, and that the tenant for life was only bound to keep down the interest of such arrears.

In · *Pearson* v. *Hillwell,* 18th Law Reports, Equity Cases, decided in 1874, Sir R. Malins, Vice Chancellor, said: "I am clearly of opinion that whenever annuities are given by will, and there are added words such as · these, which occur in this will, namely, 'I charge the same annuities respectively upon all and singular ʼmy leasehold messuages, dwelling houses, or ʼtenements, situate in Sheffield, aforesaid by me given and bequeathed,' the annuitant is entitled to resort to the *corpus,* as well as to the income of the property so charged, and that in order to exon-

erate the *corpus* there must be a distinct state-
ment that the annuity is to be paid out of the
income, and out of the income alone. The tes-
tator has not done that in the present case. He
does not seem to have supposed that there would
have been any deficiency of income to meet this
annuity, and he disposes of the surplus rents and
profits left after paying it. He has, however,
expressly charged the annuities on the *corpus* of
his estate, and I cannot, merely because he pro-
vides that if the surplus rents shall be insufficient
to pay back annuities in full that given to his
wife is to abate in favor of his mother, infer
an intention to make the annuity payable only
out of income. There must be some distinct ex-
pression of an intention to limit the source of
payment, and I can find none such here. If
there was ever a case which exemplified this rule
it is *Phillips* v. *Gutteridge,* 3 D. J., and Sec.
332, where the words fell short of any such
expression, and the *corpus* was made applicable to
the payment of the annuities. The plaintiff, con-
cluded the Court, will be entitled to receive her
arrears out of the fund in Court, and to have
the income and so much of the *corpus* as is
from time to time required to make up the full
amount of the annuity."

In the case of *Pierrepont* v. *Edwards,* 25 New
York, it appeared that the testator gave his
widow, in case he left a child of the marriage,

Overton *v.* Lea.

an annuity during widowhood of $8,000, "payable out of the income of my estate." The next clause of the will gives her, in case there should be no child, an amount of seven thousand dollars (which was the only provision in her favor), and disposed of the residue of the income to a brother and sister for their lives, with remainder to their children, on the death or marriage of the testator's widow.

The proof showed that when the testator died he supposed his estate worth at least $200,000, and that it would yield a reliable income of not less than $11,000, and that in no anticipated contingency could the net income be less than $8,000 per annum. The income fell below $7,-000, and the executor was compelled to pay out a considerable part of it in taking care of the unproductive property. He could not sell the unproductive property without great sacrifice. The principal question submitted by the executor was whether it was his duty to pay the widow her annuity when the income was insufficient.

It further appeared that the testator died without a child surviving, and hence the widow's annuity fell under the second clause of the will. Denio, Judge, in delivering the opinion of the Court of Appeals, said: "The only question which I think it necessary to consider in this case is whether the bequest of the annuity of $7,000 a year to the testator's wife was specific in the

sense that if it could not be paid out of the
fund indicated—namely, the income of the trust
estate, it was to fail or abate in the proportion
that the indicted fund should prove deficient,
or, on the other hand, whether it was intended
by the testator that it should be paid at all
events, the income of his property given to his
trustees being pointed out, by way, as it is
called, of demonstration. I am of opinion that
the . last mentioned construction is the one which
we are bound to place upon the instrument. It
will be seen by an examination of the cases, that
no positive rule of ready application to every
case can be laid down, but that each will de-
pend upon a consideration of all the material
provisions of the will to be construed, and of
the extrinsic circumstances respecting the testator's
family and estate, which may finally be brought
to bear upon the question of intent. The lead-
ing principle of the cases is that when the tes-
tator bequeaths a sum of money, or, which is the
same thing, a life annuity, in such manner as
to show a separate and independent intention, that
the money shall be paid to the legatees at all
events, that intention will not be permitted to be
overruled merely by a direction in the will that
the money is to be raised in a particular way,
or out of a particular fund." The Court cites
on this proposition Sir James Wigram, in *Dicken
v. Edwards,* 4 Hare, 273. "There is in this will

a positive direction to his executors (who are also made trustees) to pay to the testator's wife $8,000 per annum, if he shall leave children, and $7,000 per annum if he shall not; but as to the first mentioned sum, it is parcel of the direction that it is to be paid out of the income of the estate; and it is plausibly argued that the same qualification is annexed by implication to the direction to pay the $7,000 per annum in the event which has happened of there being no children." The Court remarked: "If we were to hold that the widow was to have nothing unless the property or securities in which the estate happened to be invested yielded income, and that she was not to be paid the full seven thousand dollars per annum, directed to be paid to her, unless the investment should happen to yield that sum, we should, in my opinion, sacrifice the substance and primary intention of the will for the sake of an incidental provision inserted for the convenience of the estate, and not intended to limit or control, or to render uncertain or conditional, the provision in her favor."

The case of *Delaney* v. *Van Aulen,* 84 New York, is also an instructive case on this subject, in which the will provided, viz.: "To apply said rents and profits of real estate and interest or income of personal estate to the use of my husband, William L. Kirby, during his natural life." Said the Court: "Here is not a direction to

pay a fixed sum at a specified time, and without delay, but to devote that which is received, be it more or less, to the use of the beneficiary. Clearly this is not given as an annuity. It is given as the current avails of a fund. It does not import that a sum at all events is annually to be paid out of the estate, but only that the profits of a capital sum that is to be set apart are to be so paid. It is manifestly impossible even to say, so long as the trust property yields any profits or income, that the husband is to have anything more or less than the sum annually yielded, or to have it from any other source than the annual yield. In his case there never could be a claim that the body of the trust fund should be cloven in two to yield him a sum, for the query would at once be what sums. No sum is named that he is to have. It was held, however, in that case that the annuity given to the plaintiff, James E. Delaney, should be paid only from the amount of profits of the estate, and that no part of the *corpus* of the estate could be applied to make up the deficiency. The annuity was not expressly charged on the *corpus,* and, further, the Court found that it was the intention of the testatrix that the gift or annuity should only be paid from the annual profits of the estate."

In *Baker* v. *Baker* Lord Cranworth said: "The real question is, is that which is given an annuity,

or the interest of a fund, does the language of the testator import that a sum at all events is annually to be paid out of the general estate, or only that it is the interest or a portion of the interest of a capital sum that is to be set apart." The case of *Morgan* v. *Pope,* 7 Cold., has been cited by both sides in argument and on the briefs. In that case the annuity was expressly charged on the income, and not upon the *corpus* of the estate. The facts were that "the testator gave all his estate, real and personal, to his wife, Clara, and his five sons, Andrew, Willie, Monterey, Walter Scott, and Louis Eugene, children by a former marriage, 'to be equally distributed, according to the statutory laws of the State of Tennessee,' with the proviso that 'my executors shall pay annually, *out of the income of my estate,* if it be not very seriously impaired by the war, $500 to support my daughter, Maria Morgan, and her three children, and $300 to support the children of Dr. John Pope, deceased.' "

"The testator then directs that his land be subdivided into small tracts and sold."

The Court said:

"This is not a gift of the produce of a fund, nor of the fund itself; it is a gift of an annuity of $500, which had no existence before, and is to be paid out of the income of the whole estate, for the support of the testator's daughter and her children. The annuity is charged

upon the income of the estate only, and not upon the *corpus* thereof."

We find, however, in the present case that the annuity provided for Mrs. Lea was not only payable out of rents and income, by way of demonstration, but it was expressly charged on the entire real estate of the testator. Moreover, Mrs. Lea takes the annuity as a purchaser for value, and said sum is, therefore, payable annually at all events. The result is that, in our opinion, the Court of Chancery Appeals, as well as the Chancellor, were in error in holding otherwise.

It is next assigned as error that the Court of Chancery Appeals erred in its construction of the will of John McCormack Lea, Jr., the son of Robert B. and Rebecca Salmons Lea. This will was executed on December 4, 1896, at Davos Platz, Switzerland. The testator died July 16, 1899, and his will was probated at Nashville, Tennessee, on the 4th of October, 1899. The will provided as follows: "And as to all the rest, residue and remainder of my estate and effects whatsoever and wheresoever, both real and personal, whether in possession, reversion, remainder, or expectancy, I give, devise, and bequeath the same unto my mother, Rebecca Salmons Lea, to and for her own use and benefit absolutely, provided that she does not marry again; but if she marries again, I give, devise, and bequeath the same from the time of her remarriage, to

my cousin, Overton Lea, Jr., son of Overton Lea, Sr., of Nashville, Tenn.

''I will and direct that not any portion of my estate come into the possession of my sister, Bessie Kelly, the wife of Robert Dalton Kelly, or into the possession of her husband, or of any descendant of hers, or of any one bearing the name of Kelly.

"In case my mother, Rebecca Salmons Lea, dies during my lifetime, or in case she dies intestate, or in case she gives or bequeaths to my sister, Bessie Kelly, or her husband, or any descendant of hers, or any one bearing the name of Kelly, any portion of my estate, I give, devise, and bequeath the said rest, residue, and remainder of my estate and effects, whatsoever and wheresoever, both real and personal, whether in possession, reversion, remainder, or expectancy, unto the said Overton Lea, Jr., to and for his own use and benefit absolutely."

The Court of Chancery Appeals held, "that the will of John M. Lea, Jr., is valid, and that the true intent and meaning thereof is that the defendant, Rebecca Salmons Lea, takes thereunder an estate upon condition in the lands and property therein devised to her, and that she does not take an absolute and unlimited fee estate therein; and that in the event the said Rebecca Salmons Lea shall marry again at any time, her estate in the said lands shall cease and determine, and

under the limitations of said will shall go to and be vested in Overton Lea, Jr. It is insisted on behalf of Mrs. Lea that this construction of the will of John M. Lea, Jr., is erroneous, and that, under a proper construction of said will, Mrs. Rebecca S. Lea took an estate in fee, coupled with an unlimited power of disposition, and that all limitations over therein mentioned are void."

The Court of Chancery Appeals further decreed, "That in the event the said Rebecca Salmons Lea should die intestate, or in the event that during her life she gives to the defendant, Bessie Kelly Leake, or to any descendant of the said Bessie Kelly Leake, or to any one related by blood to Dalton Kelly, the deceased husband of said Bessie Kelly Leake; or in the event the said Rebecca Salmons Lea shall will, bequeath, or devise to the said Bessie Kelly Leake, or to any descendant of the said Bessie Kelly Leake, or to any person related by blood to the said Dalton Kelly, deceased, in the pleadings mentioned, then, and upon every such event, the right and estate of the said Rebecca Salmons Lea in and to the said lands and property by the said will of John M. Lea, Jr., devised to her, shall cease and determine, and the estate and title to said lands shall at once vest in and belong to the said Overton Lea, Jr., in fee.

It is insisted on behalf of Mrs. Lea that this

holding of the Court of Chancery Appeals is also erroneous, and that the limitations over therein mentioned are void.

The first question presented for our determination upon this branch of the case is whether Mrs. Rebecca S. Lea,· by the terms of her husband's will, took an estate in fee to the lands devised to her. It is insisted that she took such an estate in fee, and that the limitations over in favor of Overton Lea, Jr., and all other restrictions therein contained upon her power of alienation, are void. In support of this position counsel cite *Brien* v. *Robinson,* 18 Pickle, 157, in which it was held:

First: "The general rule for the construction of deeds and wills undertaking to create remainders is this: If the first taker is given an estate in fee or for life, coupled with an unlimited power of disposition, the fee or absolute estate vested in him and the limitation over is void.

"If the power is dependent upon a contingency, or is definitely qualified, the estate of the first taker is limited to life, and the remainder over takes effect. In order to constitute a valid remainder or executory devise, the first taker must not be given power to defeat and extinguish it by sale or otherwise, at his will and pleasure."

Second. "A deed gives an absolute estate to the wife and nothing to the grantor's children,

which conveys land to a trustee, in terms for the use of the wife for life, with remainder to the children, but directs the trustee to permit her to occupy and cultivate it, or rent it out, and use the usufructs or rents for any purpose she may choose, and authorizes her to give any of the property she may choose to the children, to be charged as an advancement, and further makes it the duty of the trustee, upon her written request, duly witnessed, to convey the property and place its proceeds at her disposal to be reinvested or used by her at her discretion."

Third. "A trustee has no discretion, but must execuⁱᵉ a conveyance when requested, under a deed authorizing him to convey upon the written quest of the beneficiary, and to place the proceeds of the sale at her disposal."

We do not think *Brien* v. *Robertson* at all analagous or controlling in this case, for the reason that there the trustee was required upon the written request of the widow to convey the property and place the proceeds at her disposal, to be reinvested or used by her at her discretion. This was held to confer upon the widow an unlimited power of disposition. This, of course, defeated the conditional limitations over.

The case of *Meacham* v. *Graham,* 14 Pickle, 190, is very much relied on by counsel for appellant.

In that case the Court said, viz.:

"It is a fundamental principle in determining this question, that where there is an absolute and unlimited power of disposition in the first taker of personal assets, the limitation over is void. They are inconsistent and cannot stand together." *Smith* v. *Bell,* Martin & Yerg., 302-305.

It is of the essence of a valid executory devise or bequest that it be not in the power of the first taker to defeat it by any act of his. If an unlimited power of disposition be given the first taker, an absolute estate vests in him, and the executory limitation is nugatory. *Bean* v. *Myers,* 1 Cold., 227, 228. And this power of disposition may be given not only in express words, but also by words necessarily implying such power. *Bradley* v. *Carnes,* 10 Pickle, 27, 31, and cases cited; *Williams* v. *Jones,* 2 Swan., 620; *Booker* v. *Booker,* 5 Hum., 503, 511, 512.

It is insisted that Mrs. Lea's estate is inconsistent with the limitations over, and, therefore, they cannot stand together. 14 Pickle, 200, 201, *Meacham* v. *Graham.*

In *Meacham* v. *Graham,* the testator, Samuel L. Graham, had bequeathed a legacy of money to his daughter, Thomasella Hardeman Graham, and the language of the will was, viz.: "But in the event of her attaining the age of twenty-one years, unmarried, then and in that event her said legacy shall be paid to her directly, to be held and used by her until her marriage, and then

to be settled upon a suitable trustee of her own selection, etc., for and during her natural life. And in the event of her death without living children, her share of the estate to go to my son, John M. and Harry H., equally, etc."

The Court said, "It is possible she (Thomasella) may never marry. It is left to her own choice. She may forever defeat the interposition of a trustee. In the meantime the money is in her hands to be used without limitation. If she may lawfully spend one dollar, she may spend it all.

"Purchasers from her will get a good and absolute title, and she can thus wholly defeat any executory devise. If so, it is void, and her estate is absolute." But it is obvious that case is not to be assimilated to the case at bar. In that case the legacy was money—a thing consumable in its use, and since the right to consume the money was unlimited, it would defeat the remainder over. Many other cases are cited by counsel for Mrs. Lea as sustaining her contention.

Among others, *Bradley* v. *Carnes,* 10 Pickle, 30; *Turner* v. *Durham,* 12 Lea, 322; *Bean* v. *Myers,* 1 Cold., 227; *Troupe* v. *Hart,* 7 Bax., 188; *Sevier* v. *Brown,* 2 Swan., 115; *Williams* v. *Jones,* 2 Swan., 625; *Booker* v. *Booker,* 5 Hum., 511, 512; *Thompson* v. *McKissick,* 3 Hum., 634, 635; *Davis* v. *Richardson,* 10 Yerg., 292; *David* v. *Bridgeman,* 2 Yerg., 559; *Smith,*

Overton *v.* Lea.

v. *Bell,* M. & Y., 305; *Mosley* v. *Stewart,* 52
S. W. Rep., 671; *Roberts* v. *Lerois,* 153 U. S.,
367. The Court of Chancery Appeals, through
Judge Neil, has made a very careful and elaborate
rate analysis of these causes, in which it is
shown that the *language* of the particular instrument
ment under examination, which was held to confer
fer an absolute power of disposition, contained the
words "dispose," "disposal," "sell," or "give."

See, also, *Deaderick* v. *Armour,* 10 Hum., 588;
*Ballentine* v. *Spears,* 2 Bax., 273; *Pillow* v.
*Rye,* 1 Swan., 185; *McGavock* v. *Pugsley,* 1
Tenn. Ch., 410; *Cockerel* v. *Maney,* 2 Tenn.
Ch., 49; *Aydelotte* v. *Swope,* 1 Tenn. Cases, 446.
We cannot add anything to the able review of
these cases by Judge Neil, except to state our
concurrence in the opinion of the Court of Chancery
cery Appeals, that they do not control the present
case. It is perfectly plain that the will of John
M. Lea, Jr., neither in express terms nor by
necessary implication, confers upon Mrs. Rebecca S.
Lea an absolute power of disposition of the lands
devised to her. Moreover, the power of disposition
sition must be conferred expressly or impliedly by
superadded words, and the limitation over cannot
be invalidated by the power of disposition, which
is merely incident to the right of ownership. *Reid*
v. *Watkins,* 11 Lea, 158; *Brown* v. *Hunt,* 12
Heis., 409; *Pool* v. *Pool,* 10 Lea., 486. However,
ever, it is sufficient if the superadded words nec-

24 P—35

essarily imply a power of disposition. *Meacham*
v. *Graham,* 14 Pickle, 190; *Bradley* v. *Carnes,*
10 Pickle, 27. But in the will of John M.
Lea there are no words expressly or impliedly
conferring any power of disposition on Mrs. Lea,
the first taker. The language of the will is,
"Unto my mother, Rebecca Salmons Lea, to and
for her own use and benefit absolutely, provided,
that she does not marry again. But if she mar-
ries again, I give, devise, and bequeath the same
from her time of remarriage to may cousin, Over-
ton Lea, Jr., son of Overton Lea, Sr., of Nash-
ville, Tenn." The words, "To and for her own
use and benefit absolutely," do not imply an un-
limited power of disposition, because the language
is immediately coupled in the same sentence with
the proviso, "that she does not marry again." In
*Smith, T.* v. *Bell,* M. and Y., 305, it was pro-
vided in the will that the first taker should
have the property "to and for her own use and
benefit and disposal, absolutely." We entirely agree
with learned counsel for Overton Lea, Jr., in
their construction of this provision of the will,
viz. :

"This will plainly says that the property shall
be absolutely for the use and benefit of Mrs.
Lea, provided she does not marry again, but that
if she marries again it shall go to Overton Lea,
Jr. The words are all to be read together. So
read they do not mean that an absolute power

Overton *v.* Lea.

of disposition is conferred upon Mrs. Lea, nor that she takes an absolute, unqualified estate, but they do mean that the property shall be Mrs. Lea's absolutely if she remains single. The very words and sentence which creates the estate, limit it, and make it a conditional, determinable fee." 1 Underhill on Wills, Sec. 507.

"No rule of law is more firmly grounded than that a fee simple on condition at common law, and a conditional or executory limitation, under the statute of uses, wills, and grants, may qualify or be substituted for a preceding fee-simple, and reduce it to a determinable fee." 2 Wash. on Real Prop. (5th ed.), 740-755; 1 Jarman on Wills (6th. ed.), 822; *Booker* v. *Booker,* 5 Hum., 505; *Bramlet* v. *Bate,* 1 Sneed, 534; *Brown* v. *Hunt,* 12 Heis., 404; *Cowan* v. *Wills,* 5 Lea, 682; *Read* v. *Watkins,* 11 Lea, 158; *Ryan* v. *Monaghan,* 15 Pickle, 338.

Such "determinable fee," while it continues, has all the "incidents" of a fee simple, except in so far as these "incidents" are expressly further restricted by the simple limitation over. It is subject to courtesy and dower, may be aliened by deed or devise, and descends to the heirs, subject to being instantly divested out of the first taker, or those claiming under him, upon the happening of the contingency upon which the limitation is to take effect. 1 Wash. (5th ed.), 95, 178, 228, 272; 1 Jarman on Wills (6th

ed.), 836-848; 2 Wash. (6th ed.), 674; *Ryan* v. *Monaghan,* 15 Pickle, 338.

It is worthy of note the testator himself was seized of only a determinable fee in a large part of the residuary estate, and his right to devise it is an incident thereto.

But it is argued with great ability and earnestness that the provision in the will in restraint of marriage is against public policy and void.

Counsel cite Bacon's Abridgement Legacies, F., viz.:

"We must observe, as a general rule, that all conditions in restraint of marriage are to be considered strictly, being prejudicial to society, as they hinder the propagation of the species.

"Therefore, by our law, as also by the civil law, a devise upon condition not to marry, or not to marry a person of such a profession or calling, is void, whether there be a limitation over, or not; for (a) every person ought to be at liberty to marry when he pleases; and, therefore, conditions restrictive of that power are against law, and void.

(b) "If an annuity be bequeathed by a man to his wife for so many years, if she shall remain a widow so long, this is a good conditional bequest, because of the particular interest every husband has in his wife's remaining a widow; for thereby she will the better take care

of the concerns of his family, in respect of which he may well allow her a maintenance for that time, to cease when she removes herself into the interest of another family. Godolph, 45. But if a stranger gives a legacy upon such condition, it is not good, for there is no more reason for restraining a widow from marrying than a maid. Godolph, 46."

It is conceded that modern English decisions have somewhat extended the conditions under which wills in restraint of marriage may be made, notably the cases of *Newton* v. *Marsden,* 2 Johnson & Hemming, decided by Vice Chancellor Wood in 1862, and *Allen* v. *Jackson,* 1 Chancery Division, 399.

In *Newton* v. *Marsden,* 2 Johnson & Hemming, 356, it appeared that an *uncle* gave an annuity for the benefit of his nephew's widow, with the condition that the trust should cease if she married. Lord Hatherly, the Vice Chancellor, held the condition to be valid. He said, among other things:

"It seems to me that the real principle in the case of a gift by a husband is, that the condition is not regarded as an arbitrary prohibition of marriage altogether, but the conditional gift is made to the widow because she is a widow, and because the circumstances must be entirely changed if she entered into a new relation. The same consideration applies to this gift; and I think it

would be reasonable in a will of this kind to hold that the case falls within the principle which governs a gift to a man's widow."

He further said that "the good sense of the doctrine is that the widow has the option of either remaining a widow or giving up the legacy." *Allen* v. *Jackson,* L. R., 1 Ch. Div., 399 (1874).

"Mrs. Jackson, by her will, bequeathed an annuity to her nephew, Robert N. Jackson, and his wife, Ellen Ada, during their joint lives, and to the survivor for life, provided that her nephew, Robert, the survivor, should remain unmarried; and in the event of his remarriage, the annuity was to go to the children of Ellen Ada Jackson."

As will be observed, the restraint was imposed by an aunt upon the second marriage of her nephew, a man.

Robert N. Jackson married again, and claimed that the restraint imposed by the will was void.

James, L. J., said that the reason for the rule as to a widow might have been that the husband might think that if his widow were to marry again, his children would not be so well protected and cared for if she became the mother of a second family, and then he said:

"That might have been perhaps the origin of the exception, and it was held, when the thing came to be applied, that it might very well apply

to a gift by a stranger who was not the husband."

He declared that there was no difference in principle between the second marriage of a man and the second marriage of a woman, and that the law was the same as to the one as to the other.

Mellish, L. J., said that "it was decided by Lord Hatherley, in the case of *Newton* v. *Marsden,* 2 J. and H., 356, for the first time, that not merely a husband but anybody might put that restriction validly on a second marriage of the widow."

Baggally, J. A., said that "the present state of the law as regards conditions in restriction of the second marriage of a woman is this: that they are exceptions from the general rule that conditions in restraint of marriage are void, and the enunciation of that law has been general."

In the first instance, it was confined to the case of the testator, being the husband of the widow. In the next place, it was extended to the case of a son making the will in favor of his mother. That, I think, is laid down in Godolphin. Then came the case before Vice Chancellor Wood of *Newton* v. *Marsden,* 2 J. & H., 856, in which it was held to be a general exception by whomsoever the bequest may have been made.

They unanimously held that, while it had hap-

pened, all the cases which had been decided had reference to the second marriage of a woman; there was no reason why a distinction should be drawn between the sexes as regards this matter.

It is well settled by the decisions in this State that the rule against restraint upon marriage does not apply to widows. *Gourley* v. *Thompson,* 2 Sneed, 386; *Hughes* v. *Boyd,* 2 Sneed, 511; *Duncan* v. *Phillips,* 3 Head, 417; *Lane* v. *Crutchfield,* 3 Head, 452; *Reid* v. *Hancock,* 10 Hum., 368.

But we think this question practically settled by a recent decision of this Court. In *Herd* v. *Catron,* 97 Tenn., 662, the will of Jacob Brotherton, after devising land to his widowed daughter, Maria Catron, provided that "if Maria Catron marry again, her part of the land shall go to her son, Noiel Catron, and she shall have no control of the land."

At the time the will took effect, Maria Catron was a widow, and mother of Noiel Catron, and about twenty-three years of age. Afterward she married the complainant, H. P. Herd, and, with her husband, filed this bill against her son, Noiel Catron, to have the will construed, and this condition of the will that her interest in the estate should cease upon her marriage held void as a general restraint of marriage, and to have her title to the land declared absolute. This Court, speaking through Chief Justice Snodgrass,

Overton *v.* Lea.

said, viz.: "The only question is, therefore, whether this condition, which was in restraint of a second marriage, is valid or void. No question has been the subject of more controversy, and contrariety of judicial opinion than that of provisions like this, whether they be limitations or conditions in restraint of marriage. . . . It is laid down as a general proposition by all the authorities that conditions in general restraint of marriage are void, but like all other general propositions, this must be understood in reference to its application and to its exceptions. . . . One of the exceptions recognized by the general current of authority and by the almost universal concurrence of modern judicial opinion, is that such a condition in restraint of marriage does not extend to the case of a second marriage. . . . And this exception has been continued throughout modern English and American authorities.

"The present state of the law as regards conditions in restraint of the second marriage of a woman is this: That they are exceptions to the general rule that conditions in restraint of marriage are void, and the enunciation of that law has been gradual. In the first instance, it was confined to the case of the testator being the husband of the widow; in the next case it was extended to the case of a son making a will in favor of his mother; then came the case of

*Newton* v. *Marsden,* 2 Johns. & H. (decided in 1862), in which it was held the general exception by whomsoever the bequest has been made." *Allen* v. *Jackson,* 1 Chan. Div., 300.

The Court then cited Beach on Wills, Secs. 233, 237; Schouler on Wills, Sec. 603; Pritchard on Wills, Secs. 155-160.

It was held that the condition annexed to the devise to Maria Catron was valid, and that her remarriage to Herd defeated her estate.

We think that case conclusive of the question presented in this case, and we are, therefore, of opinion that John M. Lea, Jr., had the right to impose this condition against the remarriage. of his mother, and that the condition or limitation is valid.

Finally, it is insisted that the condition against allowing any of the property to come into the hands of testator's sister, Bessie Kelly, wife of Robert Dalton Kelly, or in the possession of her husband, or any descendant of hers, or of any one bearing the name of Kelly, is void.

. The provisions of the will on this subject are as follows:

"I will and direct that not any portion of my estate come into the possession of my sister, Bessie Kelly, the wife of Robert Dalton Kelly, or into the possession of her husband, or of any descendant of hers, or of any one bearing the name of Kelly.

"In case my mother, Rebecca Salmons Lea, dies during my lifetime, or in case she dies intestate, or in case she gives or bequeaths to my sister, Bessie Kelly, or her husband, or any one bearing the name of Kelly, any portion of my estate, I give, devise, and bequeath the said rest, residue, and remainder of my estate and effects, whatsoever and wheresoever, both real and personal, whether in possession, reversion, remainder, or expectancy, unto the said Overton Lea, Jr., to and for his own use and benefit absolutely." The meaning of these provisions, is that the testator gives his property to his mother on the condition that she remain a widow, and with the proviso that she shall not, by dying intestate, or by gift, in her lifetime, or by will, at her death, give it to his sister, or her husband, or their issue, or the Kelly family. Subject to these conditional limitations, the testator gave the property to his mother absolutely.

These clauses define and limit Mrs. Lea's power to alien the estate, and provide that if she disposes of the property to certain named persons, her estate shall determine and the property go to Overton Lea, Jr., in fee. These clauses provide that if Mrs. Lea in her lifetime gives, or by will devises, or by dying intestate, the property would be inherited by the Kellys, it shall go over absolutely to Overton Lea, Jr. These are valid conditional limitations. It is well settled

that any conditional limitation upon the power of alienation which is so restricted as not to be inconsistent with a reasonable enjoyment of the fee, is valid. It is conceded that if the estate had been given on condition that Mrs. Lea should not alien to any one, such a condition would be void. "But if the condition be such that the feoffee shall not alien to such an one, naming him, or to any of his heirs, or the issue of such an one, or the like, which conditions do not take away all power of alienation from the feoffee, then such condition is good." Co. Litt., 223 a; *Fowlkes* v. *Waggoner,* 46 S. W. R., Court of Chancery Appeals, 586; *Pupuyster* v. *Michael,* 57 Am. Dec., 470; *Langdon* v. *Ingram,* 28 Ind., 360; *Yost* v. *McKee,* 179 Pa. St., 371; *Conger* v. *Lowe,* 124 Ind., 368; 2 Minors Inst. (3d ed.), 284; 2 Wash. Real Prop. (5th ed.).

The conditional limitations imposed by this will are confined and restricted to a small class and are valid. ✓

We have examined the other questions made against the validity of these provisions in the will, but, in our opinion, they are not well taken. It results that on this branch of the case the decree of the Court of Chancery Appeals is affirmed, but in the other respects mentioned it is reversed.