S. T. COLLINS, Jr., et al.,
Petitioners-Plaintiffs,

v.

John L. SMITHSON et al.,
Respondents-Defendants.

Supreme Court of Tennessee.

Aug. 20, 1979.

Robert C. Henry, Henry & Henry, Pulaski, for petitioners-plaintiffs.

Carol L. Mittlesteadt, White & Mittlesteadt, Lawrenceburg, D. C. Lee, Pulaski, for respondents-defendants.

## OPINION

HARBISON, Justice.

This case involves the interpretation and legal effect of a deed executed by parents to their daughter in 1905. The daughter survived her parents and died without issue in 1976. There was language in the deed providing for reversion of the subject property to the grantors, or to their estates, in the event of the death of the daughter without issue.

Both the trial court and the Court of Appeals held that the daughter owned the

property in fee simple and that her grantees under subsequent deeds acquired a similar title valid against the claims of the heirs of the grantors. We affirm their decision, although for reasons somewhat different from those stated by them.

The case has been presented upon a stipulation of facts and documentary evidence. At some points the information contained in the record is meager, but the following is a chronological summary of the relevant facts and circumstances as adduced by the parties in the trial court.

On March 18, 1905, F. M. Collins and wife, Anna A. Collins, executed two separate deeds, conveying property to two of their children. Whether the parents owned the property as tenants by the entirety or whether title rested in one of them separately does not appear from the record. Both parents joined in the deeds, which contain no derivation clause or other information as to source of title. These parents had a third child to whom no conveyance was made in March 1905, but the record does not indicate his age or date of birth or whether he at any other time received a similar conveyance from his parents. Both of the deeds executed in 1905 were deeds of gift. Both contain language indicating that they were intended to be advancements to the grantees against their future inheritance from their parents. Both contain the grantors' estimate of the current value of the property conveyed, which values are not contested in this litigation. Both deeds required the grantees to be charged with the value of the properties being received by them as a part of each grantee's interest in the estates of the parents. Both parents later died intestate, so that, in our opinion, the law of advancements must be given consideration in determining the intent of the grantors and the legal effect of the deed in question.

That deed was executed by F. M. Collins and wife Anna Collins to Maggie L. Paisley under date of March 18, 1905. It was not recorded until June 18, 1921. None of the parties makes any issue of the latter fact, nor is there any explanation of the delay in recordation. There is no question that the grantee did in fact accept the gift from her parents, although whether the deed was delivered in 1905 upon the date of its execution or delivered later does not appear.

The pertinent provisions of the deed are as follows:

"For and in consideration of the sum of one dollar in hand paid, and for the love and affection we have for our daughter, Mrs. Maggie L. Paisley, we, F. M. Collins and wife, Anna Collins, have this day bargained and sold and donated and by these presents do transfer and convey unto Mrs. Maggie L. Paisley, her heirs and assigns, two certain tracts or parcels of land, situated and lying in the 14th and 19th civil districts of Giles County and State of Tennessee . . . [here follow descriptions of a tract of 149.85 acres and a tract of 29 acres, the former tract being the only one involved in this litigation]

"To have and to hold to the said Mrs. Maggie L. Paisley, her heirs and assigns; and we convenant with the said Mrs. Maggie L. Paisley, her heirs and assigns, that we are lawfully seized and possessed of said land in fee simple, and have a good right to convey, and that the same is unencumbered; we further covenant and bind ourselves, our heirs and representatives to warrant and forever defend the title to said land to the said Mrs. Maggie L. Paisley, her heirs and assigns, against the lawful claims of all other persons.

"But in making this deed of gift to our daughter, Mrs. Maggie L. Paisley, it is understood that in the event she, the said Maggie L. Paisley should die without issue the property herein conveyed shall revert back to us or to our estate to be redistributed between our legal heirs. We place a value of Five thousand and three hundred dollars upon the lands herein conveyed and shall be held against her the said Mrs. Maggie L. Paisley as a part of her interest in our estate, but she shall not be liable for any interest on said amount."

A similar deed, conveying other real property to S. T. Collins, son of the grantors, was executed on the same date and was recorded on January 16, 1914. This deed, both its granting clause and its habendum clause, like the deed to Mrs. Paisley, purported to convey a fee simple absolute. Like the deed to Mrs. Paisley, however, in the deed to Mr. Collins, after the general warranties, there was the following clause:

" . . . but in making this deed of gift to our son, S. T. Collins it is understood that in the event he the said S. T. Collins should die leaving no bodily heirs, the property herein conveyed shall revert back to us or our estate to be redistributed between our legal heirs and we place a value of five Thousand and sixty Dollars upon the lands herein conveyed and shall be held against the said S. T. Collins as a part of his interest in our estate, but he shall not be liable for any interest on said amount."

The record is silent as to any events between the execution of the deeds and 1934, except for the respective dates of recordation. On December 31, 1934, the original grantors F. M. Collins and wife Anna Collins executed a quitclaim deed to their son S. T. Collins with respect to the tract previously conveyed to him. It was recorded on April 30, 1935. The stipulation states that in this instrument the parents "did release the restriction" in their prior deed to S. T. Collins. The actual language of the deed is as follows:

"The purpose of this quit-claim deed is as follows: The grantors herein, by deed dated March 18, 1905, and of record in Deed Book 72, page 543, conveyed the foregoing real estate to their son, S T Collins, with a reservation that in the event the said S T Collins should die, leaving no bodily heirs, the property therein conveyed should revert to them or to their estate, to be redistributed among their heirs. It is now our intentions by this quit-claim deed to forever release and relinquish all interest and claims which we have in this land, with no reservations or restrictions, the intent being to perfect in our son, S T Collins, a fee simple title."

At this time, of course, both parents were still living, and by this deed they undertook to divest themselves of any future or reversionary interest in the tract previously conveyed to their son. They did not purport to relieve him of accounting for its value in final distribution among their heirs.

After he had obtained the quitclaim deed from his parents, but before it was recorded, S. T. Collins executed two mortgages on the property which his parents had deeded to him. These mortgages were recorded after he recorded the quitclaim deed.

It is further stipulated that F. M. Collins died intestate in 1936. His estate was administered by his son S. T. Collins and by L. E. Paisley, husband of Maggie L. Paisley. None of the records from this administration have been filed in the present litigation, and the record is silent as to what, if any, accounting was made by S. T. Collins or Mrs. Paisley for the advancements received from their parents. Such advancements, by law, are required to be accounted for, unless such accounting is waived. *See* T.C.A. §§ 31–701 to 705.

Mrs. Anna Collins, according to the stipulation, died intestate in 1943. There was no formal administration of her estate. An affidavit filed on February 22, 1947 in the Register's Office of Giles County by S. T. Collins stated that F. M. Collins and Anna Collins were then deceased, survived by three children, S. T. Collins, Mrs. Maggie L. Paisley and Solon E. Collins.

It is then stipulated that following the death of Mrs. Anna Collins, all of the real estate owned by F. M. Collins and Anna Collins was sold by their three children. The stipulation recites six separate deeds, naming the grantees and giving the recording data, but not the date, of each deed.

On December 6, 1947, Mrs. Paisley and her husband L. E. Paisley conveyed to third parties, in fee simple, the twenty-nine acre tract which she had received from her parents in 1905. It was stipulated that when the present suit was filed, the deed from Mrs. Paisley to these grantees had been of

record continuously and there had been no litigation concerning the sale of that tract. The present suit likewise does not involve the 1947[1] deed given by Mrs. Paisley.

Although otherwise unexplained or elaborated upon by testimony, the record shows that on July 8, 1950 Solon E. Collins conveyed unto Mrs. Paisley and her husband any present interest or expectancy which he might have in the 149.85 acre tract received by Mrs. Paisley from her parents in 1905.

This deed was executed in Ohio by Solon E. Collins and his wife for a stated consideration of one thousand dollars cash. It purported to convey to Mr. and Mrs. Paisley, as tenants by the entirety, "all of our right, title, interest and estate, both present and in expectancy" to the 149.85 acre tract. This deed cites as the source of title the original deed from her parents to Mrs. Paisley. Following its habendum clause, the deed contains the following statements:

"The parties to this deed are advised that Maggie L. Paisley took, under said deed to her, a fee simple title in and to the above described real estate. The grantor, Solon E. Collins, is one of the children of F. M. Collins and wife, and it is out of deference to their wishes as expressed in the last paragraph of the deed aforesaid that the grantees are taking this conveyance for the above consideration."

This statement is cryptic, and its significance is difficult to determine. The deed does show either that Mrs. Paisley in 1950 attempted to purchase any possibility of reverter that Solon E. Collins may have had or that she intended, in some way, to account to him for the advancement with which she had been charged in the 1905 deed. As stated, there is no other information in the record. Although Solon E. Collins was still living when this litigation was brought, he did not testify. An answer was filed on his behalf, insisting that his sister did indeed have fee simple title to the 149.-

85 acre tract, and he expressly disclaimed any interest therein. S. T. Collins also survived his sister, Mrs. Paisley, but he did not testify.[2]

The record further shows that L. E. Paisley died in 1963, but Mrs. Maggie L. Paisley lived until 1976, dying at age ninety-five. No children were ever born to her.

In the latter years of her life, Mrs. Paisley deeded a number of tracts of real property to her nephews, first conveying a remainder and reserving a life estate and thereafter transferring her life estate. These deeds are in the record. They cover a number of separate tracts. However, only the title to the 149.85 acre tract received by Mrs. Paisley in 1905 is involved in this case.

The suit was filed on behalf of S. T. Collins, contending that upon the death of his sister without issue in 1976, her title failed and the property reverted to the heirs of their parents. It is insisted on behalf of S. T. Collins that his sister took either a life estate or a defeasible or qualified fee under the 1905 deed. His brother Solon E. Collins and the grantees of Mrs. Paisley insisted that she acquired fee simple initially or that her title became absolute when she survived her parents, so that her subsequent death without issue did not terminate her interest.

The trial court dismissed the suit, holding that the legal effect of the deed from her parents to Mrs. Paisley was to create a fee tail estate, which was converted, by T.C.A. § 64–102, into a fee simple. In the alternative, he held that unless the gift over took effect during the lifetime of the grantors—that is, unless Mrs. Paisley died without issue while her parents were still living—her title became absolute upon her surviving them.

The Court of Appeals affirmed the judgment of the trial court but did so primarily

---

1. Referred to in the stipulation as being made in 1949.

2. A physician's statement in the record dated March 29, 1977, showed that Mr. Collins was a

resident of a nursing home, was physically unable to appear in court and had been in that condition for some four and one-half years. He died during the pendency of the appeal.

upon the theory that there was an irreconcilable conflict between the granting clause of the 1905 deed and the subsequent conditions appearing therein. Relying upon rules of construction, the Court of Appeals held that the absolute estate in fee apparently conveyed in the granting and the habendum clauses of the deed could not be reduced into a lesser estate by subsequent conditions which the Court regarded as indefinite and uncertain in legal effect.

We granted certiorari to give full consideration to the issues. The Court has been furnished excellent briefs by all counsel.

We are unable to sustain the conclusion of the trial court that the 1905 deed created a fee tail estate in the grantee, which, by operation of statute, was automatically converted into fee simple title.

The statute abolishing fee tail estates was enacted in North Carolina in 1784 and has been a part of Tennessee law since its statehood. It presently appears as T.C.A. § 64–102.

■ In construing a deed, as in construing a will, the Court is primarily concerned in trying to ascertain the intention of the parties. There is some early case law in this state to the effect that when there is a conveyance to an individual with a gift over upon failure of issue, a fee tail may be created. This, however, depends upon a construction of the conveyance under which the court finds that the grantor or testator intended an indefinite failure of issue—that is that the grantee and his issue take title indefinitely and into future generations, and that the title fails only when there is ultimately a cessation of the blood line. See *Harris v. Bittikofer*, 541 S.W.2d 372, 375, 384 (Tenn.1976).

■ Since the legislative acts of 1851–52 there has been a statutory presumption in this state that a testator or grantor did not intend such an indefinite failure of issue. T.C.A. § 64–104. Because the estate tail had, in effect, been abolished for more than one hundred years prior to the date when the deed in question was executed, we think

that the possibilities are remote that these parents intended to create such an estate in their daughter by their deed in 1905. It seems to us that it would have been a scrivener's error amounting almost to an accident if such an estate had resulted from the words used in this deed. None of the language classically used to denote or establish such an interest in real estate was employed. Accordingly we agree with the petitioners that the trial court erred in finding that the deed created a fee tail estate. We find nothing in *Harris v. Bittikofer, supra,* which requires such a result.

■ Nor are we able to agree with the Court of Appeals that the case should be disposed of by separate consideration of the technical portions of the deed. There are cases, many of which were cited by the Court of Appeals, to the effect that where there is an irreconcilable conflict between the granting and the habendum clauses or where later portions of a deed, in an uncertain or unintelligible manner, attempt to reduce a greater estate apparently conveyed in an earlier clause, the later provisions will be ineffective.[3] It has long been the preferred rule in this state, however, that all of the provisions of an instrument be considered together and that the intention of the grantor of a deed be ascertained from the entire document, not from the separate parts thereof, if at all possible. *See generally Moore v. Stanfill*, 44 Tenn. App. 217, 225–37, 313 S.W.2d 486 (1957) and cases cited therein. We are of the opinion that the intention of the grantors in the present case can be ascertained from the entire instrument and that no part of it can be or should be disregarded.

The second reason given by the trial court for sustaining the title as a fee simple, in our opinion, has merit, particularly when the provisions of the deed are considered in connection with the law of advancements between parents and children in cases of intestate distribution.

Since we have concluded that the grantors did not intend an indefinite failure of

---

3. *E. g., Teague v. Sowder*, 121 Tenn. 132, 114 S.W. 484 (1908).

issue by the language employed, in our opinion the controlling question in this case is whether they intended for the reversion, upon failure of issue of Mrs. Paisley, to occur at the date of her death at any time or only if she died before her last surviving parent. In the absence of language or circumstances indicating a contrary intention, probably the former would be the usual interpretation or construction given to a deed or will; indeed it is the interpretation which is called for by T.C.A. § 64–104, in the absence of language in the document expressing a contrary intention. The statute, however, as previously noted, was primarily directed against an interpretation that an indefinite future failure of issue was intended. *Shannon v. Union Planters National Bank*, 537 S.W.2d 919, 922 (Tenn. 1976).

There is strong authority in this jurisdiction, supported by a great number of cases, to the effect that where there has been a devise or gift of property to take effect immediately, with a gift over on the contingency of the first taker's death without issue, the reference is to death during the lifetime of the testator or grantor, absent a contrary intention from the language of the instrument or circumstances surrounding its execution. *See, e. g. Shannon v. Union Planters National Bank, supra; Martin v. Taylor*, 521 S.W.2d 581, 584 (Tenn.1975); *Vickers v. Vickers*, 205 Tenn. 86, 325 S.W.2d 544 (1959); *Lones v. Winzer*, 486 S.W.2d 758 (Tenn.App.1971). Because of basic differences between the two documents, this rule has been more frequently applied in cases of wills than of deeds, but we know of no rule of law or policy which would prevent its application in the interpretation of a deed. It was discussed in the cases of *Templeton v. Strong*, 182 Tenn. 591, 188 S.W.2d 560 (1945) and *Moore v. Stanfill*, 44 Tenn.App. 217, 313 S.W.2d 486 (1957), both involving deeds.

The trial court held from the language of the deed and the circumstances shown in evidence that the more probable intention of the grantors was that the time when the death of their daughter without

issue would cause a reversion was during their lifetime, rather than upon her death thereafter. This conclusion could be supported by respectable authority even if the deed in question did not contain any reference to advancements. Without that language, in our opinion, a closer question would be presented. When all of the language of the grantors is considered, however, it seems clear to us that the interpretation given by the trial court is that which the grantors probably intended and is more consistent with the known facts and circumstances.

Petitioners do not take issue with the assertion of respondents that the deed to Mrs. Paisley in 1905 was intended by her parents as an advancement to her against her future inheritance. The language used leaves little doubt on that point, because the grantors placed a valuation on the property and directed that its value "shall be held against her . . . as a part of her interest in our estate . . . ." Identical language was used in the deed simultaneously executed to their son S. T. Collins, and, insofar as we can tell, was never revoked.

In the case of *Johnson v. Patterson*, 81 Tenn. 626, 632–33 (1884), the Court said:

"An advancement is defined by the authorities to be, 'an irrevocable gift, by a parent, who dies afterwards intestate, of the whole or a part of what it is supposed the child will be entitled to on the death of the parent making the advancement:' [citing cases]. A shorter definition is, a gift by a parent *in presenti*, of a portion or all of the share of his child in his estate which would fall to such child at the parent's death by the statute of distribution or descent."

Further, the Court said:

"In view of our statute law on this subject, as well as on sound principles, it is settled that when a gift is shown by parent to a child the presumption of law is that it is intended as a advancement— it is a prima facie case, [citation omitted] which means, that a case of advancement is fully made out, justifying or demand-

ing a decree by a court to that effect until the contrary case is made out by a fair preponderance, that is, the proof shall show satisfactorily a contrary purpose." 81 Tenn. at 633.

See T.C.A. §§ 31–701 to 705.

There is no question in the present case but that a gift *in presenti* was intended.[4] The deed was either delivered when executed or, at the latest, when it was recorded in 1921. The grantee apparently went into possession and accepted the advancement.

Although petitioners place great emphasis upon the deed later given by the parents to their son in 1934, releasing the "restriction", or reversion, it should be noted that at that time both parents and the grantee were still living. The reversion to them, or to the survivor of them, could not occur in any event until the death of the grantee. Their inter vivos release of the reversion was not inconsistent with an interpretation that the reversions called for in the 1905 deeds were to occur, if at all, only upon the death of the grantee prior to the last surviving parent.

The record contains almost no information concerning the estates of the parents. It is shown that they were survived by three children and that these children later sold, by six separate deeds, lands owned by their parents. Whether or not Mrs. Paisley accounted to her brothers for her advancement does not clearly appear. Obliquely, it may be inferred that such an accounting was waived or was only partly made, because she accepted a conveyance from one brother in 1950 and paid him the sum of one thousand dollars, having in mind the provisions of her parents' deed to her and "out of deference to their wishes as expressed in the last paragraph of the deed aforesaid. . . . ."

In the absence of any further information in the record, we must assume either that Mrs. Paisley did make an accounting to her brothers in the administration of her father's estate or in the adjustment of the family property after her mother's death, or that such an accounting was waived. In all events, it clearly appears that the grantors expected and directed that such an accounting should be made. As pointed out by the respondents in their brief, it would be a harsh provision if the grantee were required to account to the other heirs of the grantors for the value of the property received and still suffer a divestiture of title upon death without issue at some time thereafter. The requirement that the grantee account to the estate of her father or mother (the deed used the inexact phrase "our estate") is consistent with an intention that the grantee not be required to forfeit the property after their deaths and that if the reversion to the parents were to take effect, it would do so only if the grantee died without issue before they died. It would revert to them (or the survivor) for redistribution in that event, but would not revert if the grantee survived and made an accounting ("collated" the advancement, T.C.A. § 31–702). Obviously if Mrs. Paisley had inherited the real estate from her parents by intestate succession, her title would not have been subject to a reversion; the 1905 deed, by its terms was intended to represent part of that inheritance and to advance it to her.

This provision of the deed distinguishes the present case from many others relied upon by the petitioners where conveyances providing for a gift over or a reversion upon death without issue have been construed and interpreted.

The judgments of the trial court and the Court of Appeals are affirmed at the cost of petitioners. The cause will be remanded to the trial court for the entry of any further orders which may be necessary.

BROCK, C. J., FONES and COOPER, JJ., and HUMPHREYS, Special Judge, concur.

---

4. A gift of a contingent future interest generally does not qualify as an advancement. *Thorn-*

*ton v. Thornton*, 39 Tenn.App. 225, 282 S.W.2d 361 (1955).