**Inez FRAKER, Plaintiff-Appellee,**

v.

**Albie FRAKER et al.,
Defendants-Appellants.**

Supreme Court of Tennessee.

Aug. 4, 1980.

William B. Petty, Jr., Chattanooga, for plaintiff-appellee.

J. Brice Wisecarver, Jefferson City, for defendants-appellants.

OPINION

HARBISON, Justice.

In this action for a declaratory judgment the Chancellor held that the plaintiff, appellee here, owned fee simple title to a tract of 63.96 acres of land as surviving tenant by the entirety. The Court of Appeals affirmed.

It is the insistence of the defendants, appellants here, that by reason of the operation of a rule of law pertaining to the partition of land by tenants in common, appellee took "no new title" as a result of certain partition deeds and that she has only a widow's rights in all but a small

fraction of the title to the tract which she and her husband received in a division of a family farm in 1940.

The facts are undisputed. Prior to his death intestate on October 24, 1940, T. F. M. Fraker owned a fee simple some 191 acres of land in Jefferson County, which he had acquired by purchase in 1920. He operated this as a family farm. One of his sons, Frank L. Fraker, was the husband of appellee, Inez .Fraker. This son and his wife moved onto the family farm shortly after their marriage in 1931. At first they lived in the elder Mr. Fraker's home. Later they built their own house and several improvements on a portion of the farm, consisting of a tract of about thirty-five acres. They never received a deed to this tract prior to the death of T. F. M. Fraker, but apparently they occupied it as their residence, farmed it and paid taxes on it.

When T. F. M. Fraker died interstate in 1940, he was survived by his widow, Sarah Catherine Fraker, and four children, Frank, Fannie, Carrie and Albie. Title to the property passed under the laws of interstate descent to the four children as tenants in common, subject to the rights of the surviving widow.

In February and March, 1941, Fannie Fraker sold her one-fourth interest in the farm to her two brothers and their wives, by separate warranty deeds. Under one of these, dated February 20, 1941, Fannie conveyed one-half of her interest to Frank L. Fraker and his wife, the present appellee, Inez Fraker, for a consideration of six hundred dollars. By a separate warranty deed dated March 19, 1941, she sold the remainder of her one-fourth interest to her other

brother, Albie O. Fraker and his wife Dean Fraker.

As a result of these transactions, of course, Inez Fraker and her sister-in-law Dean Fraker became owners of undivided interests in the entire farm as tenants by the entirety with their respective husbands. They were not "coparceners" in the sense of that medieval term having reference to joint heirs of ancestral property. They held by "purchase," not by "descent," and held interests in the whole acreage.[1]

A few months later, on June 16, 1941, all of the members of the family having ownership interests in the farm executed four separate deeds, under which the farm was divided into four acreage tracts. These deeds were apparently written by an attorney, who has since died. They were all deeds with full warranties—not mere quitclaim deeds. At· the top of two of them, including the deed to appellee and her husband, were typed or written the words "Partition Deed." Each of these instruments recited a consideration of one dollar "and the further consideration of a partition of the T. F. M. Fraker lands."

One of the deeds was made by the other family members as grantors to Frank L. Fraker and wife Inez Fraker, covering two parcels totaling 63.96 acres. Like instruments conveying separate tracts of differing amounts of acreage were made to the widow and to the other two children of T. F. M. Fraker, one of these deeds being made to Albie Fraker and wife Dean Fraker.

There was no monetary consideration for any of these deeds. In the ancient term of conveyancing among cotenants, no "owelty"

---

1. In feudal law, title by descent was deemed a "worthier title" to that acquired by purchase. Certain incidents of feudal tenure attached to it that did not pertain to title acquired by purchase. *See* Trautman, *Future Interests and Estates—1954 Tennessee Survey*, 7 Vand.L.Rev. 843, 844 (1954). The doctrine of "worthier title," to which the rule involved in the present case is related, survives in present Tennessee law in some respects, including conveyancing, particularly where there is an attempt by the grantor of a deed to create a "remainder" in himself or his heirs. *See Cochran v. Frierson*, 195 Tenn. 174, 258 S.W.2d 748 (1953); *Robinson v. Blankenship*, 116 Tenn. 394, 92 S.W. 854 (1906). Such provisions are usually held ineffective—the concept being that instead the grantor retains a "reversion," which descends to his heirs, and this is a "worthier title" than that which could have been conveyed through the deed (by "purchàse").

was paid by any of the grantees to any of the grantors.[2]

The four deeds were recorded simultaneously, and apparently the respective grantees entered into immediate possession of their designated tracts. Appellee testified that the 63.96 acres which she and her husband received included the thirty-five acres on which they had been living prior to the death of her father-in-law in 1940. Appellee and her husband Frank Fraker continued to live on their tract and to farm it until his death intestate in 1960. Thereafter she occupied the tract for a period of time. Later she went to live with a sister in Jefferson City, but she rented her land and apparently claimed ownership thereof to the exclusion of anyone else for a period of some eighteen years after the death of her husband, until the filing of the present suit in April 1978. She paid taxes on the property and was renting it on shares to a tenant at the date of the trial.

Shortly before filing the present suit, appellee attempted to sell part of the tract which she and her husband had acquired in 1940. Questions were raised about her title, however, by a title examiner, and she filed this suit for declaratory judgment to determine whether she was or was not the fee simple owner of the tract as surviving tenant by the entirety.[3]

Appellants rely upon the ancient rule of real property law, having its origins in the Middle Ages, that Partition deeds create no new title or changes in degree of title. The leading Tennessee case adopting the rule is *Cottrell v. Griffiths*, 108 Tenn. 191, 65 S.W. 397, 57 L.R.A. 332 (1901). There the Court said:

"We think the proposition of law is soundly settled, in best-reasoned cases, that partition [by decree] or partition deeds between tenants in common, when they are married women, and the deed or decree includes husbands, with their wives, as decretal parties or joint conveyees, carry no other or more interest to the husband, than if such decree or partition deed had been made to the wife alone. Such decree or deed only adjusts the rights of the interested parties to the possession. It makes no new title or change in degree of title. Each does not take the allotment by purchase, but is as much seized of it *by descent from the common ancestor* as of the undivided share before partition. The deed of partition destroys the unity of possession, and henceforth each holds her share in severalty, but such deed confers no new title or additional estate in the land, or, we may add, less estate *than that descended.* The title being, already in her, the deed merely designated her share by metes and bounds, and allotted it to be held in severalty." 108 Tenn. at 195, 65 S.W. 397 (Emphasis added).

In that case, as indicated in the quoted material, three daughters inherited land from their intestate father. When they undertook to partition it, the husband of one of them was added as a grantee, and in the *Cottrell* case it was held that the husband acquired no interest in the property by that deed.

This case has been followed in numerous other Tennessee cases, most of them involving joint heirs dividing inherited ancestral property. The most recent of these cases is *Hurt v. Martin*, 216 Tenn. 525, 393 S.W.2d 1 (1965). There the Tennessee cases are collated and the ancient rule of property law dealing with "coparceners" followed, despite the contention that the expressed intention of the parties to a deed should be given controlling consideration and effect. The deed involved in the *Hurt* case was executed in 1888.[4]

Coparceners are defined as:

---

2. 4 *Thompson, On Real Property* § 1827 (J.S. Grimes ed. 1979).

3. Appellee has relied solely upon her deed and has made no claim of title by adverse possession.

4. For other references to and discussions of the rule, see 2 *H.T. Tiffany, Real Property* § 470 (3d ed. B. Jones 1939); 2 *American Law of Property* § 6.20 (A.J. Casner ed. 1952); 59 Am.Jur.2d *Partition* § 189 (1971); 68 C.J.S. *Partition* § 17c (1950).

"Persons to whom an estate of inheritance descends jointly and by whom it is held as an entire estate. 2 Bl.Comm. 187." *Black's Law Dictionary* 303 (5th ed. 1979).

The estate of "coparcenary" is described as follows:

"Such estate arises where several take by descent from the same ancestor as one heir, all coparceners constituting but one heir and having but one estate and being connected by unity of interest and of title. [citation omitted] A species of estate, or tenancy, which exists where lands of inheritance descend from the ancestor to two or more persons. It arose in England either by common law or particular custom. By common law, as where a person, seised in fee-simple or fee-tail, dies, and his next heirs are two or more females, his daughters, sisters, aunts; cousins, or their representatives; in this case they all inherit, and these coheirs, are then called 'coparceners,' or, for brevity, 'parceners' only. 2 Bl.Comm. 187. By particular custom, as where lands descend, as in gavelkind, to all the males in equal degree, as sons, brothers, uncles, etc. An estate where several persons hold as one heir, whether male or female. This estate has the three unities of time, title, and possession; but the interest of coparceners may be unequal. 2 Bl.Comm. 188." *Black's Law Dictionary* 303 (5th ed. 1979).

Until the sixteenth century, the writ of partition could only issue in favor of a "parcener" and not until the reign of Henry VIII were other types of joint tenants or tenants in common permitted to partition lands held by them. 59 Am.Jur.2d, *Partition* § 164 (1971). By statute in this state, and in its predecessor, North Carolina, any person having an estate of inheritance, for life, or for years, and being in possession as a tenant in common or otherwise with others, is entitled to partition. T.C.A. §§ 23–2101 to 2152. The right is essentially statutory rather than by common law. *Administration & Trust Co. v. Catron*, 171 Tenn. 268, 102 S.W.2d 59 (1937). But rules of conveyancing having their origins in the dim and remote past still cloud the present law of real property and titles to estates in land.

Apparently the reason underlying the ancient rule that the spouse of a co-tenant who was named as grantee in a partition deed took no interest was that there was an absence of the four common-law "unities" which must coincide to create an estate by the entirety—the "unities" of interest, time, title and possession. *See Holt v. Holt*, 185 Tenn. 1, 8, 202 S.W.2d 650, 173 A.L.R. 1210 (1947).

Of course in Tennessee since 1949 these four "unities" have not been required in order to create an estate of tenancy by the entirety. T.C.A. § 64–109 expressly permits any person owning property or any interest therein in his or her own name, desiring to convert his or her interest in such property into an estate by the entireties with his or her spouse, to do so by direct conveyance to such spouse in an instrument expressing that intention. Under conveyances made since the effective date of that statute, it seems to us that an argument could be effectively made that if a spouse is intentionally included as grantee in a partition deed, there should be little reason not to carry out the intent of the parties as expressed in the instrument, including that of the grantee co-tenant who permitted and consented to such inclusion. The rule of law relied upon by appellants in this case is indeed a remnant of feudalism, and little or no reason exists for its perpetuation beyond the effective date of T.C.A. § 64–109 insofar as the inclusion of spouses on partition deeds is concerned. *See* Roady, *Real Property—1960 Survey*, 13 Vand.L.Rev. 1241 (1960), commenting on *Johnson v. Beard*, 206 Tenn. 171, 332 S.W.2d 208 (1960).

In the present case, however, the partition deeds were executed in 1940, nine years before the effective date of the foregoing statute. Therefore, consideration must be given to the contention of appellants that the rule of law laid down in the foregoing Tennessee cases and in numerous others referred to in them is applicable here.

After careful consideration, we are of the opinion, as were both the Chancellor and the Court of Appeals, that the rule invoked by appellants is not applicable to the facts of this case. Since it has been held to be a rule of property and one which affects titles to land, we are not inclined to overrule or disturb it at this time, although, as indicated above, we are not all inclined to extend it. We think that it should be applied as narrowly as possible and only where absolutely necessary to maintain the stability of titles to real property. It usually contravenes the expressed intention of the parties and is therefore contrary to modern rules and concepts of conveyancing and the interpretation of written instruments. *Collins v. Smithson*, 585 S.W.2d 598 (Tenn. 1979).

In the present case, as previously indicated, the appellee and her sister-in-law Dean Fraker were not "coparceners" as that term was understood in the early law of real property. Their interest in the Fraker farm was acquired by purchase, not by descent, and neither or them was a joint heir with the other family members.

There is little testimony in the record as to the facts surrounding the partition. Obviously it was the result of a mutual contract or agreement among the parties to divide the property. They took tracts of unequal acreage and apparently of differing values. At the time of the partition, appellee and her husband were already owners of an interest in the entire tract as tenants by the entirety. As a result of the division, they acquired a separate tract as tenants by the entirety. Both of the courts below held that this was a distinguishing feature from any of the previously reported cases, and we agree. As a result of the partition, insofar as appellee was concerned, "no new title" was created in her; she emerged as a tenant by the entirety in a separate tract, whereas she previously was a tenant by the entirety holding an undivided interest in the whole. This is not a case where the partition deed attempted to include as a grantee one who had no prior interest in the property which was being divided.

We are of the opinion that there was nothing more than a contractual family settlement involved in this case, as there was in *Jones v. Jones*, 150 Tenn. 554, 266 S.W. 110 (1924). In that case one of the joint heirs received a deed to one-half of her father's homeplace, title being conveyed to her and her husband for life with remainder to their children. The rule of law relied upon by appellants in the present case was argued forcefully in that case, and it was insisted that the deed to her from her cotenants, vesting in her only a life estate and leaving a remainder to her children, was void and of no effect since it purported to create a "new title." This Court rejected that argument and found from all of the facts that there was a contractual agreement among all of the heirs with respect to the entire estate of the decedent. The Court found no reason not to give effect to the intention of the parties as expressed in their settlement agreement.

In that case the Court noted the decisions discussed above and relied upon by appellants here. It stated that they had generally involved partition deeds to husbands and wives. The Court declined to extend them to a different context involving children.

We think that the approach taken in that case was sound and that it is applicable here. Appellee and her sister-in-law, quite apparently, made a contractual agreement, expressly or impliedly, with the other family members that they would continue to hold interests as tenants by the entirety with their respective husbands, which interests they had going into the partition and which interests they retained when they emerged. It apparently was the contractual agreement of all of the parties, who were consenting adults, that those interests be transferred from an undivided one-eighth in the whole to tenancy by the entirety in a separate acreage tract, 63.96 acres in the case of appellee and 62.52 acres in the case of Dean Fraker. The descriptions in the four deeds by which the division was made are detailed surveyor's descriptions. They had to have resulted from mature consideration and negotiation among the parties.

We know of no reason why the contractual agreement among these parties should not be given effect according to its terms. We do not find applicable the ancient rule of law contended for by appellants, which, in our opinion, would work a most unjust and inequitable result. We believe that there was more here than just partition deeds among "coparceners" of an ancestral estate. *Cf. Roney v. Dyer*, 25 Tenn.App. 545, 161 S.W.2d 640 (1939).

The judgment of the courts below are affirmed at the cost of appellants. The cause will be remanded to the trial court for the entry of any further orders which may be necessary.

BROCK, C. J., and FONES and COOPER, JJ., concur.