Opal HALL, Linda Gale Derring, Bobby Hall, and Inez Brandon, Appellants,

v.

Bertha HALL, Ronnie Dixon and Randall Dixon, Appellees.

Supreme Court of Tennessee.

Sept. 8, 1980.

James W. Chamberlain, Lafayette, for appellants.

James Donoho, Hartsville, Frank D. Farrar, Lafayette, Solon Fitzpatrick, Carthage, for appellees.

## OPINION

BROWN, Justice.

This case involves the interpretation and legal effect of a deed wherein the grantor gave the grantee an estate in land with an apparent unlimited power of disposition and conversely placed a condition upon her right of ownership.

On December 20, 1920, T.A. Hall conveyed three tracts of land by warranty deed to his wife, Ms. Betty Hall, the plaintiff. In the granting clause of this deed, the grantor stated:

> I do this day Give and bequeath my Entire Rite (sic) and title to the following described tracks (sic) of land to wit (property described).

Later in the habendum clause, he states: [t]he condition of this deed is as follows: In case I, T.A. Hall should die before my wife and leave her a widow then she shall have full control and full power to handle or do just as she should see fit with the above described property just so long as she lives my widow but if she should every (sic) mary (sic) any other man then this deed becomes void to her and the above described property shall fall to my children.

▮ T.A. Hall died in 1957 and on August 16, 1978, the plaintiff, still a widow, and numerous family members including children, daughters–in–law and grandchildren, conveyed the land by deed to Ronnie and Randall Dixon, also plaintiffs in the present action. The validity of this conveyance was questioned by the defendant, Opal Hall, one of the plaintiff's daughters–in–law, and several grandchildren. Thereafter, the plaintiffs brought this suit in chancery court to determine the nature and extent of their estate alleging that Ms. Hall held a fee simple absolute estate and that the Dixons derivatively held a similar estate. The defendants answered alleging that Ms. Hall held the land in a fee simple subject to a conditional limitation or executory interest[1] and not in fee simple abso-

---

1. The terms "conditional limitation" and "executory interest" describe the same estate and are used interchangeably. Simes, L. and Smith, A., *The Law of Future Interests*, § 221 (1956).

lute. They contend that the Dixons' ownership of the property is subject to the condition that Ms. Hall not remarry.

In a memorandum opinion, the Chancellor held that the defendants failed to overcome the presumption that T.A. Hall had given Ms. Hall a fee simple absolute, created in T.C.A. § 64–501, which provides:

> Every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the granter or devisor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument.

Also cited by the Chancellor was *Green v. Young*, 163 Tenn. 16, 40 S.W.2d 793 (1931); *Williams v. Williams*, 167 Tenn. 26, 65 S.W.2d 561 (1933); *Webb v. Webb*, 53 Tenn. App. 609, 385 S.W.2d 295 (1964).

In a split decision, the Court of Appeals affirmed the Chancellor, but on slightly different grounds. The majority correctly stated that the intent of the grantor controls a deed interpretation. Without addressing the aforementioned statute they concluded, however, that where the conveyance is accompanied by an unlimited power of disposition in the grantee, the future interest created in or limitation over to a third party, i.e., the children in the present case, was void, citing *Erwin National Bank v. Riddle*, 18 Tenn.App. 561, 79 S.W.2d 1032 (1934) as controlling. In his dissent, Judge Todd stated that it was the unequivocal intent of the deed that Ms. Hall have absolute ownership and control of the subject property unless and until she should remarry, in which event the Dixons' title, derived through Ms. Hall, would cease and the title would revert to the heirs of T.A. Hall.

■ The overriding purpose of any deed interpretation is the determination of the grantors' intent of the conveyance. *Collins v. Smithson*, 585 S.W.2d 598 (Tenn.1979). In this case, as in many cases where the grantor is not trained in the law and the deed is handwritten, it is difficult to determine the subjective intent of the grantor. This task is made more difficult by the presence of repugnant or conflicting clauses. The product of this interpretative process can therefore only be the judicially ascertained intent of the grantor. This intent in normally derived by examining "the language employed in (the) conveyance, read as an *entirety* and in the light of circumstances of its formulation" and assuming that these evidence the grantor's subjective intent. (Emphasis added). 3 *Restatement of Property*, § 242 (1940). For reasons stated hereinafter we are of the opinion that the Chancellor and the Court of Appeals erred in their interpretation of the present deed.

■ Before addressing the issues in dispute, we believe it necessary to address two secondary matters briefly. First, although not raised as an issue, Tennessee courts have long recognized that a limitation upon remarriage in derogation of an estate in land is valid. *See Overton v. Lea*, 108 Tenn. 505, 547, 68 S.W. 250, (Tenn. 1902); *Hinton v. Bowen*, 190 Tenn. 463, 230 S.W.2d 965, (Tenn.1950). Secondly, the Dixons, as purchasers are:

> [c]hargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deed or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient contained in any deed or record, which a prudent person ought to examine, to produce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the fact so contained. *Teague v. Sowder*, 121 Tenn. (13 Cates) 132, 151, 114 S.W. 484 (1908) citing 2 Devlin on Deeds, § 100.

■ In the present case, the limitation is clearly evident on the face of the deed. The Dixons hold their title derivatively and hold no greater title than Ms. Hall held and hold it subject to the same limitations as Ms. Hall.

■ The construction of the deed sub judice involves the consideration of two possible estates, one, a fee with an apparent unlimited power of disposition and the oth-

er a fee simple subject to an executory interest or conditional limitation. The latter is an estate which upon the happening of a stated condition or event, other than its natural termination, will automatically divest the fee holder and vest in the holder of the executory interest, who must not be the original grantor. *Yarbrough v. Yarbrough*, 151 Tenn. 221, 269 S.W.2d 36, 38 (Tenn. 1924); 4 *Thompson on Real Property*, § 1872 (1979 Replacement). The fee holder possesses all the powers and rights of a fee simple absolute, i.e., it may be sold, rented, mortgaged, devised and descend to heirs, so long as the event which terminates does not occur.

At common law and in some Tennessee decisions the rule was generally stated that where a second clause in a deed, usually the habendum, conflicted with and reduced a greater estate given in an earlier clause, the granting clause would usually govern. *See Bennett v. Langhan*, 214 Tenn. 674, 383 S.W.2d 16 (Tenn.1964); *Roberts v. Hale*, 216 Tenn. 578, 393 S.W.2d 155 (Tenn.1965).

Although not totally abandoning this rule of construction, we recently noted:

> It has long been the preferred rule in this state, however, that all of the provisions of an instrument be considered together and that the intent of the grantor of a deed be ascertained from the entire document, not from the separate parts thereof, if at all possible. *Collins, supra*, at 603.

In *Erwin National Bank v. Riddle, supra*, the decision relied upon by the Court of Appeals, the grantee was conveyed real property

> To have and to hold . . . to the said Gertrude Riddle during her natural life and at her death to R.D. Riddle, their heirs and assigns forever . . . .
>
> .  .  .  .  .
>
> And we do further covenant . . . to warrant and forever defend the title to said land to the said Gertrude Riddle and R.D. Riddle's heirs and assigns.

The Court held that the word "assigns" was inconsistent with the intention on the part of the grantors that the grantee should take only a life estate. Since the word "assigns" evidences the intention on the grantor's part of give the power to sell and dispose of the property, a fee simple or absolute estate vested in the grantee, and the limitation over was void.

As evidenced in *Erwin*, a technical interpretation of the deed voided a limitation over to a third party, regardless of the grantor's intent. This technical interpretation of deed was a minority position at common law, with the majority holding that the limitation over was not void. See Annotation, 37 A.L.R. 1177 (1925). The minority position, needless to say, was unsatisfactory to any future interest holder. Conversely, the majority position was unsatisfactory to creditors, because unlike the minority position, an estate for life or years was granted and the holder possessed an unlimited power of disposition, the creditor was unable to attach the property interest unless the power had been exercised by a will to a donee. See Simes, L. and Smith, A., *The Law of Future Interests*, § 944–946 (1956). To strike a balance between two apparent conflicting interests, i.e., creditors and future interests, in 1932, the ancestor to present T.C.A. § 64–106[2] was enacted which provides:

> 64–106. Estate with unlimited power of disposition—When the unlimited power of disposition, qualified or unqualified, not accompanied by any trust, is given expressly, in any written instrument, to the owner of any particular estate for life or years, legal or equitable, such estate is changed into a fee absolute as to right of disposition, and rights of creditors and purchasers, but subject to any future estate limited thereon or executory devise thereof, in event and so far as the power is not executed or the property sold for the satisfaction of debts during the continuance of the particular estate.

**2.** This statute is apparently patterned after a similar 1829 New York statute. See Simes, L. and Smith, A., *The Law of Future Interests*, § 1081 (1956).

The effect of the statute is that the estate holder's power of disposition, whether qualified or unqualified, not accompanied by a trust, when given an estate for life or years, was elevated to a fee simple absolute as to creditors and purchasers but subject to any future interests if the power goes unexercised or the lands are not sold in satisfaction of debts. See Comment, 58 Mich.L.R. 753, 755–756 (1958). By its wording the statute applies to estates "for life or years" while the present action involves a fee simple subject to an executory interest. In *Magevney v. Karsch*, 167 Tenn. 32, 54, 65 S.W.2d 562 (1933) it was stated by dictum that the statute was enacted to circumscribe the rule that "if the first taker is given an estate in *fee* or for life coupled with an unlimited power of disposition, the *fee* absolute estate vests in the first taker and the limitation over is void." (Emphasis added). By implication, the *Magevney* court held the statute applicable to a fee simple subject to an executory interest.

At common law, a fee simple subject to an executory interest was transferable inter vivos and therefore could be attached by creditors in satisfaction of a debt, but subject to the same condition imposed on the estate holder. Because the creditor can reach the estate holder's interest in property, the spirit and rationale behind the statute makes it inapplicable to the present estate. Likewise, the wording of the statute nowhere indicates, contrary to the *Magevney* dictum, that it should be applied to the present estate. We are, therefore, of the opinion that the statute is not applicable to the present estate.

*Erwin* is factually distinguishable from the present case because although it did technically contain a power of appointment or disposition, it did not involve a conditional limitation clause. For this reason and because of the obvious similarities with the present action, we find *Overton v. Lea*, *supra*, controlling.

In *Overton v. Lea*, the devise in question read:

> I give, devise and bequeath the same unto my mother, Rebecca Salmons Lea, to and for her own use and benefit absolutely, provided that she does not marry again; but if she marries again, I give, devise and bequeath the same from the time of her remarriage to my cousin, Overton Lea, Jr.

Addressing the initial issue of whether the language "to and for her own use and benefit absolutely" implied an unlimited power of disposition, the court held that it did not because "the language is immediately coupled in the same sentence with the proviso that she does not marry again." 108 Tenn. 546, 68 S.W.2d 260. The Court went on to adopt the defendant's construction of the will:

> "This will plainly says that the property shall be absolutely for the use and benefit of Mrs. Lea, provided she does not marry again, but that if she marries again it shall go to Overton Lea, Jr. The words are all to be read together. So read they do not mean that an absolute power of disposition is conferred upon Mrs. Lea, nor that she takes an absolute, unqualified estate, but they do mean that the property shall be Mrs. Lea's absolutely if she remains single. The very words and sentence which creates the estate, limit it, and make it a conditional, determinable fee." 1 Underhill on Wills, Sec. 507.

> "No rule of law is more firmly grounded than a fee simple on condition at common law, and a conditional or executory limitation, under the statute of uses, wills, and grants, may qualify or be substituted for a preceding fee simple, and reduce it to a determinable fee." *Id.*, 108 Tenn. 546–47, 68 S.W.2d 260.

The Court concluded that this will created a "determinable fee" by which the devisee took absolutely the "incidents" of a fee simple but that in effect the conditional limitation followed the estate so as to divest it from the devisee or her grantees upon the happening of the condition. In other words, should the devisee convey her interest, her grantees would be divested of the estate should the devisee marry. This is the result suggested by Judge Todd in his

dissent in relying upon *Hinton v. Bowen*, 190 Tenn. 463, 230 S.W.2d 965 (1950). *Hinton*, however, is distinguishable from the present case because the will gave no power of disposition to the devisee although it did contain a conditional limitation. The learned Chancellor was of the opinion that the defendants had failed to overcome the presumption created in T.C.A. § 64–501, however, we disagree.

While it is true that the courts have a general attitude of disfavor toward restrictions on the fee and are slow to imply a construction from ambiguous language, such restrictions or conditions are valid and, where legal, will be enforced. Since the condition is an "express term" the statute states that the presumption does not arise. *See Magevney v. Karsch*, 167 Tenn. 32, 65 S.W.2d 562 (1933).

The grantor's intent in the present case is clear and unequivocal. The estate is subject to a condition, the happening of which will forfeit the holder's estate.

Under the interpretation given the deed by the Chancellor and the Court of Appeals, the clause containing the conditional limitation of forfeiture upon remarriage is merely precatory and idle verbiage. Under the interpretation of *Overton v. Lea*, and Judge Todd, the clause "she shall have full power to handle or do just as she shall see fit" would also be verbiage. This interpretation, however, would not distort the grantor's intent because even with its omission, the grantee would still possess all the powers and rights of ownership the clause allegedly conveys. We are, therefore, of the opinion that Ms. Hall acquired the estate of fee simple subject to a conditional limitation or executory interest in the deed from her husband. When she sold the real property to the Dixons, she could convey no more of an estate than she possessed. The Dixons, therefore, acquired the property subject to their forfeiture upon the remarriage of Ms. Hall.

The decision of the Court of Appeals is reversed.

BROCK, C. J., and FONES, COOPER, and HARBISON, JJ., concur.