IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2009 Session

JANE FIELD, ET AL. v. THE LADIES' HERMITAGE
ASSOCIATION AND STATE OF TENNESSEE

Appeal from the Chancery Court for Davidson County
No. 07-783-II     Carol L. McCoy, Chancellor

No. M2008-02663-COA-R3-CV - Filed March 3, 2010

The heirs of the woman who conveyed Tulip Grove to the Ladies' Hermitage Association filed suit claiming, among other things, that due to the Association's failure to pay the heirs as required in the deed of conveyance, the property reverted to the heirs. We affirm the trial court's grant of partial summary judgment to the Association holding that the Association did not fail to comply with the obligations relevant to the reversion, so no reversion was triggered.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

W. Gary Blackburn, Nashville, Tennessee, for the appellant, Jane Field.

Robb S. Harvey, Heather J. Hubbard, Nashville, Tennessee, for the appellee, The Ladies' Hermitage Association.

Robert E. Cooper Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Kevin Steiling, Deputy Attorney General, for the Amicus Curiae, State of Tennessee.

**OPINION**

This appeal involves whether the historic property known as Tulip Grove should revert to the heirs of the woman who conveyed the property to the Ladies' Hermitage Association ("LHA"). By way of background, LHA is a non-profit organization that has been responsible for overseeing President Andrew Jackson's home, The Hermitage, and

surrounding property since 1889. The home known as Tulip Grove was built by Andrew Jackson Donelson and his wife, Emily. Andrew Jackson Donelson was Rachael Jackson's nephew and served with President Jackson in different capacities. Tulip Grove and The Hermitage are geographically close to one another. Jane Buntin and her husband bought the Tulip Grove property in 1914.

It is undisputed that in March of 1964, Jane Buntin, who had been active in LHA, conveyed to the Ladies' Hermitage Association the Tulip Grove house and surrounding property of 26.33 acres. In the warranty deed dated March 11, 1964, LHA made certain promises in exchange for the property.[1] The deed contained the following provision:

> FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00) cash in hand paid and other good and valuable considerations, hereinafter described, paid and to be paid by The Ladies' Hermitage Association, hereinafter called "GRANTEE" to Jane B. Buntin, hereinafter called "GRANTOR", receipt of all of which is hereby acknowledged and in addition, the said Grantee, by the acceptance of this Deed, agrees to pay to Grantor, her heirs and assigns, for a period of ninety-nine (99) years from and after March 1, 1964 one-third (1/3) of all gate receipts received by Grantee from visitors to Tulip Grove House located on said land, which payments are to be made on a monthly basis. If for any period of six (6) calendar months hereafter beginning July 1 to December 31, and from January 1 to June 30, and for each succeeding year, Grantee should fail to pay to Grantor, her heirs and assigns, from such gate receipts or from other funds of Grantee at least $600.00 (except during such time as Tulip Grove House is being restored or rebuilt after fire or other casualty), then and in that event the title to the property herein conveyed shall revert to Grantor, her heirs and assigns, and this deed shall become null and void.

In April of 2007, Ms. Buntin's heirs, Jane Field and Carolyn Wilmot Gray ("Heirs"),[2] filed suit alleging that LHA had failed to comply with its obligations under the deed. The Amended Complaint alleged that LHA had failed to make payment to the Heirs as required in the deed. The Heirs first alleged that the Tulip Grove property should revert to the Heirs

---

[1]While not relevant to the issues on appeal, LHA quitclaimed the Tulip Grove property to the State of Tennessee on December 11, 1990, pursuant to Tenn. Code Ann. § 4-13-101, *et seq*. The state acknowledges that the quitclaim deed is junior to the 1964 warranty deed.

[2]During the course of the litigation the trial court allowed additional heirs to be added, John Everett Field, Jr., Christopher Everett Field (individually and as next friend of his minor children), and Evangeline Wilmot Gray. Carolyn Wilmont Gray was allowed a voluntary dismissal without prejudice on September 12, 2008, but by order dated October 1, 2008, rejoined the case as an indispensable party.

due to the failure of LHA to comply with the terms of the deed. Consequently, the Heirs alleged that they "are entitled to immediate possession and recovery of the Tulip Grove property." Additionally, in an attempt to recover money allegedly due the Heirs from LHA, the Heirs sought an accounting and independent audit of all gate receipts attributable to Tulip Grove and The Hermitage[3] between 1963 and 2007.[4] LHA filed a counterclaim seeking, among other things, a declaratory judgment for construction of the reversionary language in the deed and a finding that LHA has title to Tulip Grove through adverse possession should the court find a reversion.

LHA filed two motions for partial summary judgment: one motion was an attempt to narrow the request for an accounting and the other sought a finding that no reversion had occurred. The trial court granted portions of LHA's attempt to limit the accounting claims. The October 27, 2008 order placed parameters on the accounting and possible monetary recovery by the Heirs in the event it is determined that LHA violated the terms of the deed. This motion was unopposed, and it does not appear that the trial court's findings in the October 27 order are at issue in this appeal. The trial court's October 27 order on the unopposed motion is as follows:

> 1. Plaintiffs' claim for an "accounting" is limited, pursuant to the applicable statute of limitations, Tenn. Code Ann. § 28-3-109(a)(3), to the six-year period preceding the filing of the Complaint on April 9, 2007.
>
> 2. The Warranty Deed dated as of March 11, 1964, shall be construed as follows:
>
>> a. "gate receipts" is interpreted to mean general admission tickets sold by Ladies' Hermitage to the public who chose to tour the Tulip Grove House and specifically does not include charges for private special event rentals of the grounds.
>>
>> b. "received by Grantee [Ladies' Hermitage] from visitors" is interpreted to mean gate receipts actually collected by Ladies' Hermitage from visitors to Tulip Grove House; and
>>
>> c. "to Tulip Grove House on said land" is interpreted to mean

---

[3]It is alleged that for a period of years LHA sold a joint ticket that allowed entry both to The Hermitage and Tulip Grove.

[4]The Heirs also sought recovery of a historic table and bible not at issue on appeal.

gate receipts received from visitors to Tulip Grove House and specifically does not mean receipts received from persons who visited the Hermitage or walked or were transported across land surrounding The Hermitage, Tulip Grove House, or other property held in trust by The Ladies' Hermitage Association for the people of the State of Tennessee.

This October 27 order was expressly incorporated into the November 12 order that was appealed. The Heirs filed no opposition to the LHA motion for partial summary judgment pertaining to the accounting. It would be difficult to challenge the October order on appeal when no objection was raised to the trial court. In any event, on appeal the Heirs challenge only the November order finding that there was no reversion. Therefore, we make no comment and intend no inadvertent construction of the trial court's interpretation of the deed in its October 27 order.

LHA also filed a motion for partial summary judgment seeking a finding that reversion was not available to the Heirs. The order pertaining to the reversion clause, which is the subject of this appeal, was entered on November 12, 2008, and provides in pertinent part:[5]

1. The Court finds as a matter of *[language whitened out]* law that Defendant's Motion for Partial Summary Judgment as to Count I is well taken and should be granted. Plaintiffs are not entitled to a reversion of the Tulip Grove House and Property which is the subject of the Warranty Deed dated as of March 11, 1964. Reversion constitutes a forfeiture, which is disfavored under Tennessee law. Even a valid reversion clause must be strictly construed against the grantor, and a reversion will not be found unless the evidence clearly shows that the unambiguous language triggering reversion has been violated. The record reflects that *[language whitened out]* The Ladies' Hermitage Association always complied with the safeguard provision of the Warranty Deed by paying Jane Buntin or her heirs at least $600 every six months. There are no facts in the record that would support a reversion under the Warranty Deed. Accordingly, judgment is entered in favor of Ladies' Hermitage and Plaintiffs' claim for reversion is hereby dismissed with prejudice.

2. The Court hereby incorporates by reference its Order entered October 27,

_____

[5]Since Carolyn Gray filed no response to the LHA motion on reversion, the trial court entered a separate order granting partial summary judgment against her on October 27, 2008.

2008, granting Defendant's Motion for Partial Summary Judgment as to Count
II.

The trial court made findings pursuant to Tenn. R. Civ. P. 54.02 making this order immediately appealable. The case is still pending before the trial court on several issues, including whether the Heirs are entitled to a monetary recovery from LHA based on its failure to pay the Heirs 1/3 of the gate receipts and whether the Heirs are entitled to recover a table and Bible at issue.

Jane Field appeals the November 12, 2008 order of the trial court finding that the Heirs are not entitled to a reversion. The sole issue in this appeal is whether Tulip Grove has reverted to the Heirs. It does not appear that any of the other Heirs joined in the appeal.[6]

## I. ANALYSIS

We begin our analysis with a point upon which the parties agree: the warranty deed at issue grants a fee simple determinable with a reversionary interest. The parties disagree, however, on what triggers the reversion. The Tennessee Supreme Court has recently described the attributes of a fee simple determinable.

> A fee simple determinable is a fee simple which may endure in the grantee forever, but which is subject to a special limitation that may cause the estate to revert to the grantor. *Yarbrough v. Yarbrough*, 151 Tenn. 221, 269 S.W. 36, 37-38 (1925); 28 Am.Jr.2d *Estates* § 26 (2004). The future interest retained by the grantor of a fee simple determinable is a mere possibility of reverter. *Mountain City Missionary Baptist Church v. Wagner*, 193 Tenn. 625, 249 S.W.2d 875, 876 (1952).

*Griffis v. Davidson County Metropolitan Government*, 164 S.W.3d 267, 274 (Tenn. 2005).

When the special limitation is no longer met, then the fee simple estate terminates automatically. *Griffis*, 164 S.W.3d at 274. The holders of the reversion do not have to act, because the termination of the fee simple estate is automatic. *Id.* (citing *Bailey v. Eagle Mtn. Tel. Co.*, 303 S.W.2d 726, 729 (Tenn. 1957); *Mountain City Missionary Baptist Church*, 249 S.W.2d at 876; 2 THOMPSON ON REAL PROPERTY, § 20.02, at 618 (David A. Thomas ed. 1994)).

---

[6]For convenience sake, we will continue to refer to Ms. Field on appeal as "Heirs."

In order to determine whether LHA has triggered the reversion, we must first construe the deed in question to determine what acts or failures cause a reversion. Construction of a deed is a question of law. *Griffis*, 164 S.W.3d at 274 (citing *Rodgers v. Burnett*, 65 S.W. 408, 411 (1901); *Mitchell v. Chance*, 149 S.W.3d 40, 45 (Tenn. Ct. App. 2004)). Conclusions of law are reviewed *de novo* with no presumption of correction. *Griffis*, 164 S.W.3d at 274. Once we have construed the deed, then the issue of whether LHA violated the deed in such a way as to trigger the reversion is a question of fact. *See Griffis*, 164 S.W. 3d at 279-80.

The primary task in construing a deed is "to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances." *Griffis*, 164 S.W.3d at 274 (citing *Collins v. Smithson*, 585 S.W.2d 598, 603 (Tenn. 1979); *Bennett v. Langham*, 383 S.W.2d 16, 18 (Tenn. 1964)). With regard to reversions, courts disfavor placing restrictions on fee interests and are reluctant to "infer the existence of restrictions from ambiguous language." *Griffis*, 164 S.W.3d at 280 (citing *Hall v. Hall*, 604 S.W.2d 851, 856 (Tenn. 1980)). Such restrictions are, however, valid and will be enforced where legal. *Id*. Critical to our analysis of the reversionary language at issue, however, is the rule that since the reverter of a fee simple determinable is a forfeiture, it must be strictly construed. *Griffis*, 164 S.W.3d at 280 (citing *Wells v. McCanless*, 198 S.W.2d 641, 643 (Tenn. 1947)). The Tennessee Supreme Court has found:

> Like other forfeitures, reverters are not favored and a court of equity will not find one unless the evidence clearly shows that the purpose and the spirit of the grant have been violated.

*McDonald v. Smith County Board of Education*, 675 S.W.2d 704, 706 n.2 (Tenn. 1984).

Consequently, it is clear that under longstanding Tennessee law, a reversion is to be given effect only to the extent it is clearly required, and the language establishing the trigger of the reversion, or the breadth of the reversion, is to be strictly construed.

The deed in question provides that for 99 years LHA is to pay the Heirs "one-third (1/3) of all gate receipts received by Grantor from visitors to Tulip Grove House." Whether LHA has performed this obligation has not yet been decided by the trial court and is not part of this appeal. Whether the property reverts to the Heirs is the question on appeal. The language in the deed creating the possibility of a reversion is as follows:

> If for any period of six (6) calendar months hereafter beginning July 1 to December 31, and from January 1 to June 30, and for each succeeding year, Grantee should fail to pay to Grantor, her heirs and assigns, from such gate

receipts or from other funds of Grantee at least $600.00 (except during such time as Tulip Grove House is being restored or rebuilt after fire or other casualty), then and in that event the title to the property herein conveyed shall revert to Grantor, her heirs and assigns, and this deed shall become null and void.

Construing the plain meaning in the deed, the reversion in this provision is triggered only if LHA fails to pay the Heirs from gate receipts or other funds at least $600 twice a year for a total of $1200 yearly.

The Heirs argue that the entire provision must be construed together and that failure by LHA to comply with the other obligation, *i.e.* payment to the Heirs of 1/3 of the gate receipts, triggers the reversion.[7]  In other words, according to the Heirs, if LHA fails to pay the Heirs 1/3 of the gate receipts or fails to pay the Heirs yearly at least $1200, then the property reverts.

We find this position unpersuasive for two reasons.  First, the language in the deed does not support this position.  Under the deed, the Heirs are to receive 1/3 of the gate receipts, but the deed does not specify a consequence for LHA's failure to pay the correct gate percentage amounts.  The reversion provision, however, provides that if LHA does not pay the Heirs at least $1200 yearly, then the property reverts.  The deed does not say, as the Heirs urge us to interpret it, that if LHA fails to make the correct payments under its obligation to pay the Heirs 1/3 of the gate receipts, then the property reverts.  To the contrary, the reversion language is attached only to the failure to pay $600.00 twice a year.

Second, as discussed earlier, reversions are enforceable but they are disfavored, and courts will not infer a reversion.  We do not find the language in the deed ambiguous.  But even if it were, the courts will not enforce a reversion that springs from unclear or ambiguous language.

Consequently, we find that in order for there to be a reversion under the deed LHA must have failed to make the minimum $1200 yearly payment.  As an issue of fact, the parties agree and the trial court found that LHA has paid Ms. Buntin and her Heirs at least $600 every six months.  Consequently, applying the clear language of the deed to the undisputed facts, the trial court did not err in granting LHA partial summary judgment that a reversion has not occurred under this deed.

---

[7]Specifically, the Heirs argue that when LHA closed Tulip Grove and when LHA undercharged visitors to Tulip Grove the provision requiring LHA to pay the Heirs 1/3 of the gate receipts was violated.

The trial court is affirmed.  Costs are taxed to the appellant, Jane Field, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, P.J., M.S.